# EXHIBIT A

**District 1**

## Case Summary

**Case No. 2022CH09803**

| | | | |
|---|---|---|---|
| **Bria Randle,Vanessa Gusman,Kasie Sedwick,Nicole DeMonte,Ainsley Jacobson,Brandy Luker-vs-Match Group, Inc.,Match Group, LLC,Tinder, Inc.** | § | Location: | **District 1** |
| | § | Judicial Officer: | **Calendar, 2** |
| | § | Filed on: | **10/03/2022** |
| | § | Cook County Attorney Number: | **62258** |

### Case Information

Case Type: Class Actions
Case Status: **10/03/2022 Pending**

### Assignment Information

**Current Case Assignment**

| | |
|---|---|
| Case Number | 2022CH09803 |
| Court | District 1 |
| Date Assigned | 10/03/2022 |
| Judicial Officer | Calendar, 2 |

### Party Information

| | | *Lead Attorneys* |
|---|---|---|
| **Plaintiff** | **DeMonte, Nicole** | **Wise, Brandon Michael** ***Retained*** |
| | **Gusman, Vanessa** | **Wise, Brandon Michael** ***Retained*** |
| | **Jacobson, Ainsley** | **Wise, Brandon Michael** ***Retained*** |
| | **Luker, Brandy** | **Wise, Brandon Michael** ***Retained*** |
| | **Randle, Bria** | **Wise, Brandon Michael** ***Retained*** |
| | **Sedwick, Kasie** | **Wise, Brandon Michael** ***Retained*** |
| **Defendant** | **Match Group, Inc.** | **Pro Se** |
| | **Match Group, LLC** | **Pro Se** |
| | **Tinder, Inc.** | **Pro Se** |

### Events and Orders of the Court

02/02/2023 **Case Management** (10:00 AM) (Judicial Officer: Mitchell, Raymond W.)
Resource: Location CH2601 Court Room 2601
Resource: Location D1 Richard J Daley Center

11/02/2022 Motion Filed

## Case Summary

**Case No. 2022CH09803**

*Plaintiff's Motion for Class Certification and Request for Discovery on Certification Issues*
Party: Plaintiff Randle, Bria

11/02/2022 Exhibits Filed
*Exhibit A - Roberson Class Cert Order*
Party: Plaintiff Randle, Bria

11/02/2022 Exhibits Filed
*Exhibit B - PWCK Resume*
Party: Plaintiff Randle, Bria

11/02/2022 Exhibits Filed
*Exhibit C - Siri Resume*
Party: Plaintiff Randle, Bria

10/28/2022 Proof Of Service Filed
*Match LLC - Proof of Service*
Party: Plaintiff Randle, Bria

10/28/2022 Proof Of Service Filed
*Tinder - Proof of Service*
Party: Plaintiff Randle, Bria

10/28/2022 Proof Of Service Filed
*Match Group, Inc. - Proof of Service*
Party: Plaintiff Randle, Bria

10/21/2022 Pro Hac Vice
*Pro Hac Vice - Mason Barney*
Party: Plaintiff Randle, Bria

10/20/2022 Pro Hac Vice
*Admission Pro Hac Vice - Sonal Jain*
Party: Plaintiff Randle, Bria

10/05/2022 Summons Issued And Returnable
*Summons to be issued - Match Group, LLC*

10/05/2022 Summons Issued And Returnable
*Summons to be issued - Match Group, Inc.*

10/05/2022 Summons Issued And Returnable
*Summons to be issued - Tinder, Inc.*

10/03/2022 New Case Filing

10/03/2022 Class Action Complaint Filed
*Class Action Complaint*
Party: Plaintiff Randle, Bria
Party 2: Attorney Wise, Brandon Michael

10/03/2022 Affidavit Filed
*Brandon Wise 222 Affidavit*
Party: Plaintiff Randle, Bria
Party 2: Attorney Wise, Brandon Michael

FILED
10/3/2022 2:02 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
19736516

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

BRIA RANDLE, VANESSA GUSMAN, KASIE SEDWICK, NICOLE DEMONTE, AINSLEY JACOBSON, and BRANDY LUKER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs*,

v.

MATCH GROUP, INC., MATCH GROUP, LLC, and TINDER, INC.

*Defendants*.

2022CH09803

Case No.:

Judge:

**CLASS ACTION COMPLAINT**

Plaintiffs Bria Randle, Vanessa Gusman, Kasie Sedwick, Nicole DeMonte, Ainsley Jacobson, Brandy Luker (hereinafter "Plaintiffs"), brings this Class Action Complaint individually and on behalf of all others similarly situated against Defendants Match Group, Inc., Match Group LLC, and Tinder, Inc. (hereinafter "Defendants") to stop Defendants' unlawful collection, use, storage, and disclosure of Plaintiffs' and the proposed Class's sensitive, private, and personal biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by their attorneys. Further, Plaintiffs allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Bria Randle is a natural person and citizen of Illinois.

2. Plaintiff Vanessa Gusman is a natural person and citizen of Illinois.

3. Plaintiff Kasie Sedwick is a natural person and citizen of Illinois.

4. Plaintiff Nicole DeMonte is a natural person and citizen of Illinois.

5. Plaintiff Ainsley Jacobson is a natural person and citizen of Illinois.

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

6. Plaintiff Brandy Luker is a natural person and citizen of Illinois.

7. Defendant Match Group, Inc. is a Delaware corporation with a principal place of business in Texas.

8. Defendant Match Group, Inc. may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

9. Defendant Match Group, LLC is a Delaware limited liability corporation with a principal place of business in Texas.

10. Defendant Match Group, LLC may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

11. Upon information and belief, Defendant Match Group, Inc. owns and controls Defendant Match Group, LLC.

12. Defendant Tinder, Inc. is a Delaware corporation with a principal place of business in Texas.

13. Defendant Tinder, Inc. may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

14. Upon information and belief, Defendant Tinder, Inc. is the entity through which Defendant Match Group, LLC operates, owns, and/or does business as Tinder.

15. Jurisdiction is proper in this Court as Plaintiffs are citizens of Illinois and Defendants operates their business in Illinois, targets business activity in Illinois, and purposefully avails itself of the laws, protections, and advantages of doing business in Illinois, with Illinois consumers like Plaintiffs.

16. Venue is proper in this Court, as upon information and belief, a substantial part of the events giving rise to the claim occurred in this county.

## INTRODUCTION

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

17. Defendant Match Group, Inc. is an American internet and technology company that owns and operates the largest global portfolio of popular online dating services including Tinder, Match.com, Meetic, OKCupid, Hinge, PlentyOfFish, Ship, and OurTime, totaling over 45 global dating companies.[1]

18. Tinder is a free app developed by Match Group, Inc. that is available both on Android and iOS.

19. Match Group, Inc. begin using selfie biometrics for identify verification in Tinder in early 2020.[2]

20. Tinder connects its users with profiles using location-based technology based on gender, distance and orientation filters you set.[3]

21. Tinder offers Photo Verification to make sure the person on the account matches their photos. Verified profiles will have a blue checkmark.[4]

22. Tinder's Photo Verification consists of one simple step of taking a video selfie. You will receive a "Photo Verified" status if the person in your video selfie passes both the Liveness Check and 3d Face Authentication steps.[5]

23. Tinder's Liveness Check scans the user's face in their video and helps Tinder confirm that the video was taken by a real, live person, and that it was not digitally altered or manipulated. 3D Face Authentication detects the user's face in their video selfie and their profile photos, and extracts facial geometries using facial recognition technology to generate a unique number or facial geometry "template."[6]

[1] Available at https://en.wikipedia.org/wiki/Match_Group (last accessed Sept. 23, 2022).
[2] Available at https://en.wikipedia.org/wiki/Match_Group (last accessed Sept. 23, 2022).
[3] Available at https://tinder.com/faq (last accessed Sept. 23, 2022).

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

24. Defendants unlawfully store the biometric facial scans of its customers without their consent.

25. Defendants have failed – and continue to fail – to follow Illinois' Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. This failure is of great concern to Plaintiffs because it exposes Plaintiffs to serious and irreversible privacy risks.

26. The State of Illinois takes the privacy of biometric data seriously. The State's approach is not particularly surprising in light of recent events related to biometric identifiers.

27. If a biometric database is hacked, breached, or otherwise exposed – such as in the recent Equifax, and Marriott data breaches or misused such as the recent SolarWinds hack by Russian agents that exposed hundreds of companies' data – employees have ***no*** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this highly personal and private information.

[4] Available at https://tinder.com/faq (last accessed Sept. 23, 2022).
[5,6]Available at https://www.help.tinder.com/hc/en-us/articles/4422771431309-How-Does-Selfie-Verification-Work- (last accessed Sept. 23, 2022).

28. Hackers regularly target biometric databases. In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants.[7]

29. Moreover, an illegal market already exists for biometric data. For example, hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world. That database contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens.[2] In January 2018, an Indian newspaper reported that the

[7] U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.
[8]*See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), available at https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-inindiahas-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

information housed in Aadhaar was available for purchase for less than $8 and could be obtained in as little as 10 minutes.[8]

30. Unlike written passwords or social security numbers – which can be changed or replaced if stolen or compromised – biometrics are unique, permanent biometric identifiers associated with each individual.

31. There is no realistic way, absent surgery, to reassign someone's biometric data. A person can obtain a new social security number, but not a new face, which makes the protection of, and control over, biometric identifiers and biometric information particularly important.

32. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics.

33. Defendants capture biometric facial scans, one of the specifically enumerated forms of biometric identifiers set forth in BIPA, both directly and indirectly, from any and all individuals whose facial scans are collected using Tinder. Defendants collect and retains these facial scans in a database.

34. Notwithstanding the clear and unequivocal requirements of Illinois law, Defendants violated Illinois individuals' statutorily protected privacy rights and unlawfully collected, stored, and used those individuals' biometric data in violation of BIPA. In particular, Defendants have violated and continues to violate BIPA because it did not, upon information and belief:

a. Properly inform Plaintiffs and others similarly situated in writing of the specific purpose and length of time for which their biometric facial scan(s) were being collected, stored, disseminated and used, as required by BIPA;

b. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' biometric facial scan(s), as required by BIPA;

c. Receive a written release from Plaintiffs and others similarly situated to collect, store, disseminate or otherwise use their biometric facial scan(s), as required by BIPA; and

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

d. Obtain a written release from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their biometric identifiers and/or biometric information to a third party as required by BIPA.

35. Plaintiffs and the putative Class are aggrieved by Defendants' failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of individual's last interactions with the entity.

**ILLINOIS'S STRONG STANCE ON PROTECTION OF BIOMETRIC INFORMATION**

36. BIPA provides valuable privacy rights, protections, and benefits to citizens of Illinois.

37. In passing BIPA, the Illinois General Assembly found that major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then- growing yet unregulated technology. See 740 ILCS 14/5.

38. In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. The bankruptcy was alarming to the Illinois General Assembly because there was suddenly a serious risk that millions of fingerprint records – which, similar to other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now- bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

FILED DATE: 10/3/2022 2:02 PM   2022CH09803

39.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. See Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

40.     The Illinois General Assembly explicitly acknowledged that Biometrics "are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c)

41.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

42.     To ensure such compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

43.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.  Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

    b.  Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.  Receives a written release executed by the subject of the biometric identifier or biometric information."

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

See 740 ILCS 14/15(b).

44. Biometric identifiers include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." See 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id*.

45. BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. See, e.g., 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See*, 740 ILCS 14/15(d)(1).

46. BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

47. Plaintiffs, like the Illinois General Assembly, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

**PLAINTIFFS SPECIFIC ALLEGATIONS**

48. Plaintiffs are customers of Match Group, Inc., Match Group LLC and/or Tinder, Inc. ( "Defendants"), who, upon information and belief, utilizes Defendants' Photo Verification and Liveness Check for its identification verification through biometric authentication.

49. Defendants offer their customers "Photo Verification" and "Liveness Check" which allows its customers to authenticate themselves in their video selfies to pass through the Liveness Check and 3d Face Authentication.

FILED DATE: 10/3/2022 2:02 PM   2022CH09803

50.     Defendants utilize the biometric facial scans by scanning the customer's face in their video and uses that to confirm that the video was taken by a real, live person, and was not digitally altered or manipulated.

51.     Defendants' 3D Face Authentication detects the customer's face in the video selfie and their profile photos, and extracts facial geometries using facial recognition technology to generated a unique number or facial geometry "template."

52.     These biometric facial scans are used by Defendants to verify if the customer in their video self is the same person that is in their profile photos.

53.     Defendants state that they will only use the facial recognition information for the purpose of Photo Verification.

54.     Upon information and belief, Plaintiffs have been utilizing Defendants' Photo Verification between approximately 2020 to current.

55.     Upon information and belief, Defendants, either directly or indirectly, collected, utilized and stored the Plaintiffs' facial biometric identifiers in its database(s).

56.     Storing Plaintiffs' biometric facial scans has value to Defendants because the larger the database, the more accurate and useful the database becomes.

57.     Plaintiffs were never informed of the specific limited purposes or length of time for which Defendant collected, stored, or used their biometrics.

58.     Plaintiffs were never informed of any biometric data retention policy developed by Defendant, nor have they ever been informed of whether Defendants will ever permanently delete their biometrics.

59.     Plaintiffs were never provided with nor ever signed a written release allowing Defendants to collect, capture, store, or otherwise obtain their biometric facial scan or other biometrics.

FILED DATE: 10/3/2022 2:02 PM    2022CH09803

60.     Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein.

61.     BIPA protects individuals like Plaintiffs and the putative Class from this precise conduct, and Defendants had no right to secure this data.

62.     Through BIPA, the Illinois General Assembly has created a right – a right to receive certain information prior to an entity securing their highly personal, private and proprietary biometric data – and an injury – not receiving this extremely critical information.

63.     Pursuant to 740 ILCS 14/15(b), Plaintiffs and the putative Class were entitled to receive certain information prior to Defendants securing their biometric data; namely, information advising them of the specific limited purpose(s) and length of time for which it/they collect(s), store(s), and use(s) their biometric facial scan(s) and any biometrics derived therefrom; information regarding Defendants' biometric retention policy; and, a written release allowing Defendants to collect and store their private biometric data.

64.     No amount of time or money can compensate Plaintiffs if their biometric data is compromised by the lax procedures through which Defendants captured, stored, used, and disseminated Plaintiffs' and other similarly-situated individuals' biometrics, and Plaintiffs would not have provided their biometric data to Defendants if they had known that Defendants would retain such information for an indefinite period of time without their consent.

65.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

66. Plaintiffs are not required to allege or prove actual damages in order to state a claim under BIPA, and they seek statutory damages under BIPA as compensation for the injuries caused by Defendants. *Rosenbach*, 2019 IL 123186, ¶ 40.

**DEFENDANTS' BIOMETRIC FACIAL-SCANNING OF ILLINOIS CITIZENS**

67. Defendants have the means to achieve identity verification of their customers through biometric authentication.

68. Defendants have caused these biometrics to be associated with certain individuals' identities, along with other personal, private information for each individual.

69. However, on information and belief, Defendants do not acknowledge that Defendants are capturing and storing this sensitive biometric information when a customer uses one of Defendants' products their websites. To the contrary, an individual using Defendants' facial recognition software through a subsidiary, for example a customer like Plaintiffs here, likely will have no idea that Defendants are collecting this information or even that Defendants are connected in any way to the their facial recognition software.

70. Nor, on information and belief, Defendants link to their privacy statement such that any disclosures made there are known to their customers. Thus, a customer who does not know that his/her facial scan is being stored by Defendants has no means or reason to review Defendants' privacy statement.

71. As a result of the foregoing, on information and belief, despite capturing, collecting and retaining these biometrics, from their customers, Defendants do not adequately:

a. Inform their customers in writing that Defendants are capturing, obtaining, collecting, or storing biometric information or biometric identifiers;

b. Inform its subsidiaries' customers in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored,

FILED DATE: 10/3/2022 2:02 PM   2022CH09803

and used; or

    c.   Receive a written release executed by its subsidiaries' customers consenting to collection, capture, obtainment, purchase, storage, or retention of biometric information or biometric identifiers.

72.    Furthermore, on information and belief, Defendants' website, at relevant times hereto, did not have a written, publicly available policy identifying its biometrics retention schedule, nor did Defendants provide such information to their customers from whom Defendants were collecting their biometric facial scans.

73.    Defendants, on information and belief, did not inform Plaintiffs in writing (or otherwise) that Defendants were obtaining, capturing, collecting and/or storing their biometric identifier, or of the specific purposes and length of term for which it would collect, capture, store, and/or use their biometric identifier or biometric information. Defendants did not obtain from Plaintiffs consent required by BIPA to capture, collect, store, obtain, and/or use Plaintiffs' biometric facial scan or associated biometrics.

74.    Nor did Plaintiffs know or fully understand that Defendants were collecting, capturing, and/or storing biometrics when Plaintiffs was utilizing the biometric facial scan identity verification; nor did Plaintiffs know or could Plaintiffs know all of the uses or purposes for which Plaintiffs' biometrics were taken.

75.    The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Defendants' – where individuals are aware that they are providing a biometric but not aware of to whom or for what purposes they are doing so – is dangerous.

76.    That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers or information such as a finger

scan, and/or data derived therefrom, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long.

77. Thus, BIPA is the Illinois General Assembly's expression that Illinois citizens have biometric privacy rights, as created by BIPA.

78. Defendants disregarded these obligations and instead unlawfully captured, collected, stored, and used individual's biometric identifiers and information, without ever receiving those individual's informed written consent as required by BIPA.

79. Because Defendants neither published a BIPA-mandated data retention policy nor disclosed the purposes for their collection of biometric data, their customers have no idea whether Defendants sell, disclose, re-disclose, or otherwise disseminate their biometric data.

80. Nor are Plaintiffs and the putative Class told to whom Defendants currently disclose their biometric data, or what might happen to their biometric data in the event of a buyout, merger, or a bankruptcy.

81. By and through the actions detailed above, Defendants have not only disregarded the Class' privacy rights, but it has also violated BIPA.

## CLASS ALLEGATIONS

82. Plaintiffs bring this action on behalf of themselves and pursuant to 735 ILCS 5/2-801 on behalf of a class (hereinafter the "Class") defined as follows:

> All Illinois residents who directly or indirectly used Defendants' biometric authentication products and subsequently had his or her biometric facial scan captured, collected, stored, or otherwise obtained by Defendants during the applicable statutory period.

Excluded from the class are Defendants' officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

83. **Numerosity:** The exact number of class members is unknown and is not available to Plaintiffs at this time, but upon information and belief, there are in excess of forty potential class

FILED DATE: 10/3/2022 2:02 PM   2022CH09803

members, and individual joinder in this case is impracticable. Class members can easily be identified through Defendants' records and allowing this matter to proceed on a class basis will prevent any retaliation by Defendants against individuals who are currently having their BIPA rights violated.

84.     **Common Questions:** There are several questions of law and fact common to the claims of Plaintiffs and the Class members, and those questions predominate over any questions that may affect individual Class members. Common questions include, but are not limited to, the following:

a.  whether Defendants collected, captured, received, or otherwise obtained Plaintiffs' and the Class' biometric identifiers;

b.  whether Defendants properly informed Plaintiffs and the Class that it collected, used, and stored their biometric identifiers;

c.  whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with Defendants, whichever occurs first;

d.  whether Defendants obtained an executed written release (as defined in 740 ILCS 14/10) from Plaintiff and the Class to collect, capture, or otherwise obtain their biometric identifiers;;

e.  whether Defendants obtained an executed written release (as defined in 740 ILCS 14/10) from Plaintiffs and the Class  before capturing, collecting, converting, sharing, storing or using individuals' biometrics;

f.  whether Defendants provided a writing disclosing to Plaintiffs and the Class the specific purposes for which the biometrics are being collected, stored, and used;

g.  whether Defendants provided a writing disclosing to Plaintiffs and the Class the length of time for which the biometrics are being collected, stored, and used;

h.  whether Defendants' conduct violates BIPA;

i.  whether Defendants' conduct was negligent, reckless, or willful;

j.  whether Plaintiffs and Class members are entitled to damages, and what is the proper measure of damages;

85.     **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interest of the class and has retained competent counsel experienced in complex litigation

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

and class action litigation. Plaintiffs have no interests antagonistic to those of the class, and Defendants have no defenses unique to Plaintiffs.

86. **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because of the fear and likelihood of retaliation by Defendants against individuals bringing a civil action as an individual. Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

## COUNT I – FOR DAMAGES AGAINST DEFENDANTS
## VIOLATION OF 740 ILCS 14/15(a) – FAILURE TO INSTITUTE, MAINTAIN, AND ADHERE TO PUBLICLY AVAILABLE RETENTION SCHEDULE

87. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

88. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. See 740 ILCS 14/15(a).

89. Defendants fail to comply with these BIPA mandates.

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

90. Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendants, as explained in detail in above. See 740 ILCS 14/10.

91. Plaintiffs' biometric identifiers were used to identify Plaintiffs and, therefore, constitute "biometric information" as defined by BIPA. See 740 ILCS 14/10.

92. Defendants failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. See 740 ILCS 14/15(a).

93. Upon information and belief, Defendants lack retention schedules and guidelines for permanently destroying Plaintiffs' and the Class' biometric data and have not and will not destroy Plaintiffs' and the Class' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

94. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring the Defendants to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**COUNT II – FOR DAMAGES AGAINST DEFENDANTS**
**VIOLATION OF 740 ILCS 14/15(b) – FAILURE TO OBTAIN INFORMED WRITTEN CONSENT AND RELEASE BEFORE OBTAINING BIOMETRIC IDENTIFIERS OR INFORMATION**

95. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

96. BIPA requires companies to obtain informed written consent from Illinois citizens before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

"collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

97. Defendants fails to comply with these BIPA mandates.

98. Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendants, as explained in detail above. *See* 740 ILCS 14/10.

99. Plaintiffs' and the Class' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

100. Defendants systematically and automatically collected, used, stored and disseminated Plaintiffs' and the Class' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

101. Defendants never informed Plaintiffs and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used and disseminated, nor did Defendants inform Plaintiffs and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

102. By collecting, storing, using and disseminating Plaintiffs' and the Class' biometric identifiers and biometric information as described herein, Defendants violated Plaintiffs' and the Class' rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

103. On behalf of themselves and the Class, Plaintiffs seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class of similarly situated individuals, pray for an Order as follows:

A. Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq*., and certifying the Class as defined herein;

B. Designating and appointing Plaintiffs as representative of the Class and Plaintiffs' undersigned counsel as Class Counsel;

C. Declaring that Defendants' actions, as set forth above, violate BIPA;

D. Awarding Plaintiffs and the Class members statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2); statutory damages of $1,000 per *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

E. Declaring that Defendants' actions, as set forth above, were intentional or reckless;

F. Declaring that Defendants' actions, as set forth above, were negligent;

G. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including an Order requiring Defendants to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

H. Awarding Plaintiffs and the Class members reasonable attorneys' fees and costs incurred in this litigation pursuant to 740 ILCS 14/20(3);

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

I. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

J. Granting all such other and further relief as the Court deems just and appropriate.

Dated: October 3, 2022

Respectfully Submitted:

By: */s/ Brandon M. Wise*

Brandon M. Wise – IL Bar # 6319580
Paul A. Lesko – IL Bar # 6288806
Adam Florek – IL Bar # 6320615
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@peifferwolf.com
Email: plesko@peifferwolf.com
Email: aflorek@peifferwolf.com

Mason A. Barney, Esq.
(*pro hac vice to be filed*)
Sonal Jain, Esq.
(*pro hac vice to be filed*)
**SIRI & GLIMSTAD LLP**
745 Fifth Ave, Suite 500,
New York, NY 10151
Tel: (212) 532-1091
mbarney@sirillp.com
sjain@sirillp.com

COUNSEL FOR THE PLAINTIFFS AND THE PUTATIVE CLASS

FILED
10/3/2022 2:02 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
19736516

FILED DATE: 10/3/2022 2:02 PM 2022CH09803

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

BRIA RANDLE, VANESSA GUSMAN, KASIE SEDWICK, NICOLE DEMONTE, AINSLEY JACOBSON, and BRANDY LUKER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs*,

v.

MATCH GROUP, INC., MATCH GROUP, LLC, and TINDER, INC.

*Defendants*.

Case No.: 2022CH09803

Judge:

**RULE 222(b) AFFIDAVIT**

Pursuant to Illinois Supreme Court Rule 222(b), Plaintiff advises that this matter seeks more than $50,000.00 in damages.

Dated: October 3, 2022

Respectfully Submitted:

By: */s/ Brandon M. Wise*

Brandon M. Wise – IL Bar # 6319580
Paul A. Lesko – IL Bar # 6288806
Adam Florek – IL Bar # 6320615
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@peifferwolf.com
Email: plesko@peifferwolf.com
Email: aflorek@peifferwolf.com

COUNSEL FOR THE PLAINTIFF AND THE PUTATIVE CLASS

FILED
10/5/2022 1:53 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
19774019

FILED DATE: 10/5/2022 1:53 PM 2022CH09803

| | | |
|---|---|---|
| **2120 - Served** | **2121 - Served** | **2620 - Sec. of State** |
| **2220 - Not Served** | **2221 - Not Served** | **2621 - Alias Sec of State** |
| **2320 - Served By Mail** | **2321 - Served By Mail** | |
| **2420 - Served By Publication** | **2421 - Served By Publication** | |

**Summons - Alias Summons** **(03/15/21) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Bria Randle, et al., individually and on behalf of all others similarly situated

Plaintiff(s)

v.

Match Group, Inc., Match Group, LLC, and Tinder, Inc.

Defendant(s)

Case No. 2022CH09803

The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801

Address of Defendant(s)

Please serve as follows (check one): ○ Certified Mail ◉ Sheriff Service ○ Alias

## SUMMONS

To each Defendant: Match Group, Inc.

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

**THERE IS A FEE TO FILE YOUR APPEARANCE.**

**FILING AN APPEARANCE: Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 10/5/2022 1:53 PM 2022CH09803

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

(●) Atty. No.: 62258
( ) Pro Se 99500

Name: Brandon M. Wise

Atty. for (if applicable):

Plaintiffs

Address: 818 Lafayette Ave., Floor 2

City: St. Louis

State: MO Zip: 63104

Telephone: (314) 833-4827

Primary Email: bwise@peifferwolf.com

Witness date 10/5/2022 1:53 PM IRIS Y. MARTINEZ

CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Iris Y. Martinez, Clerk of Court

☐ Service by Certified Mail: ____________

☐ Date of Service: ____________
(To be inserted by officer on copy left with employer or other person)

FILED DATE: 10/5/2022 1:53 PM 2022CH09803

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5133

### CIVIL DIVISION

**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5116

### COUNTY DIVISION

**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6300

### DOMESTIC VIOLENCE

**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info: (312) 325-9500

### LAW DIVISION

**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5426

### PROBATE DIVISION

**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE

**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info: (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS

**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info: (847) 818-3000

### DISTRICT 4 - MAYWOOD

**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info: (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW

**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info: (708) 974-6500

### DISTRICT 6 - MARKHAM

**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info: (708) 232-4551

FILED
10/5/2022 1:55 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
19774077

FILED DATE: 10/5/2022 1:55 PM 2022CH09803

**2120 - Served** **2121 - Served** **2620 - Sec. of State**
**2220 - Not Served** **2221 - Not Served** **2621 - Alias Sec of State**
**2320 - Served By Mail** **2321 - Served By Mail**
**2420 - Served By Publication** **2421 - Served By Publication**
**Summons - Alias Summons** **(03/15/21) CCG 0001 A**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Name all Parties

Bria Randle, et al., individually and on behalf of all others similarly situated

Plaintiff(s)

v.

Match Group, Inc., Match Group, LLC, and Tinder, Inc.

Defendant(s)

The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801

Address of Defendant(s)

Case No. 2022CH09803

Please serve as follows (check one): ○ Certified Mail ◉ Sheriff Service ○ Alias

**SUMMONS**

To each Defendant: Match Group, LLC

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

**THERE IS A FEE TO FILE YOUR APPEARANCE.**

**FILING AN APPEARANCE: Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 10/5/2022 1:55 PM 2022CH09803

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

◉ Atty. No.: 62258
○ Pro Se 99500

Name: Brandon M. Wise
Atty. for (if applicable):
Plaintiffs

Address: 818 Lafayette Ave., Floor 2
City: St. Louis
State: MO Zip: 63104
Telephone: (314) 833-4827
Primary Email: bwise@peifferwolf.com

Witness date

10/5/2022 1:55 PM IRIS Y. MARTINEZ

Iris Y. Martinez, Clerk of Court

CIRCUIT COURT OF COOK COUNTY, ILLINOIS

☐ Service by Certified Mail: ____________

☐ Date of Service: ____________
(To be inserted by officer on copy left with employer or other person)

FILED DATE: 10/5/2022 1:55 PM 2022CH09803

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5133

### CIVIL DIVISION

**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5116

### COUNTY DIVISION

**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6300

### DOMESTIC VIOLENCE

**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info: (312) 325-9500

### LAW DIVISION

**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5426

### PROBATE DIVISION

**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE

**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info: (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS

**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info: (847) 818-3000

### DISTRICT 4 - MAYWOOD

**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info: (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW

**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info: (708) 974-6500

### DISTRICT 6 - MARKHAM

**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info: (708) 232-4551

FILED
10/5/2022 1:52 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
19773946

FILED DATE: 10/5/2022 1:52 PM 2022CH09803

**2120 - Served** **2121 - Served** **2620 - Sec. of State**
**2220 - Not Served** **2221 - Not Served** **2621 - Alias Sec of State**
**2320 - Served By Mail** **2321 - Served By Mail**
**2420 - Served By Publication** **2421 - Served By Publication**
**Summons - Alias Summons** **(03/15/21) CCG 0001 A**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Name all Parties

Bria Randle, et al., individually and on behalf of all others similarly situated

Plaintiff(s)

v.

Match Group, Inc., Match Group, LLC, and Tinder, Inc.

Defendant(s)

The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801

Address of Defendant(s)

Case No. 2022CH09803

Please serve as follows (check one): ○ Certified Mail ◉ Sheriff Service ○ Alias

**SUMMONS**

To each Defendant: Tinder, Inc.

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

**THERE IS A FEE TO FILE YOUR APPEARANCE.**

**FILING AN APPEARANCE: Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 10/5/2022 1:52 PM 2022CH09803

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

◉ Atty. No.: 62258
○ Pro Se 99500

Name: Brandon M. Wise

Atty. for (if applicable):

Plaintiffs

Address: 818 Lafayette Ave., Floor 2

City: St. Louis

State: MO Zip: 63104

Telephone: (314) 833-4827

Primary Email: bwise@peifferwolf.com

Witness date ______

10/5/2022 1:52 PM IRIS Y. MARTINEZ

Iris Y. Martinez, Clerk of Court

CIRCUIT COURT OF COOK COUNTY, ILLINOIS

☐ Service by Certified Mail: ______

☐ Date of Service: ______
(To be inserted by officer on copy left with employer or other person)

FILED DATE: 10/5/2022 1:52 PM 2022CH09803

**GET YOUR COURT DATE BY CALLING IN OR BY EMAIL**

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

**CHANCERY DIVISION**

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5133

**CIVIL DIVISION**

**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5116

**COUNTY DIVISION**

**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5710

**DOMESTIC RELATIONS/CHILD SUPPORT DIVISION**

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6300

**DOMESTIC VIOLENCE**

**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info: (312) 325-9500

**LAW DIVISION**

**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5426

**PROBATE DIVISION**

**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6441

**ALL SUBURBAN CASE TYPES**

**DISTRICT 2 - SKOKIE**

**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info: (847) 470-7250

**DISTRICT 3 - ROLLING MEADOWS**

**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info: (847) 818-3000

**DISTRICT 4 - MAYWOOD**

**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info: (708) 865-6040

**DISTRICT 5 - BRIDGEVIEW**

**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info: (708) 974-6500

**DISTRICT 6 - MARKHAM**

**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info: (708) 232-4551

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 2

FILED
10/20/2022 3:08 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
19980388

FILED DATE: 10/20/2022 3:08 PM 2022CH09803

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

BRIA RANDLE, et al.,
individually and on behalf of all others similarly situated

*Plaintiffs,*

v.

MATCH GROUP, INC., MATCH GROUP, LLC, and TINDER, INC.

*Defendants.*

Case No. 2022CH09803

**VERIFIED STATEMENT OF OUT-OF-STATE ATTORNEY**
**PURSUANT TO SUPREME COURT RULE 707**

I, Sonal Jain, submit this Verified Statement pursuant to Illinois Supreme Court Rule 707.

1. My full name is Sonal Jain, my date of birth is June 1, 1996. The address of offices from which I practice law and related email address and telephone numbers are as follows:

SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone: (212) 532-1091
Email: sjain@sirillp.com

2. I represent Plaintiffs Bria Randle, Vanessa Gusman, Kasie Sedwick, Nicole DeMonte, Ainsley Jacobson, and Brandy Luker in *Randle et. al., v. Match Group, Inc. et. al.*, in the Chancery Division of the Circuit Court of Cook County, Illinois; Case No. 2022-CH-09803:

3(a). I have not filed any other appearance pursuant to this rule during this calendar year.

3(b). I have not received a registration number from the ARDC.

4(a). I list each jurisdiction of admission, including any state, territory, or commonwealth of the United States, the District of Columbia, or in a foreign country, and my full admission name and license number.

Sonal Jain; State of New York; License No. 5855275
Sonal Jain; Delhi, India; Enrolment No. D/9707/2019

4(b). I attach a letter or certificate of good standing for each of the jurisdictions listed in paragraph 4(a) above.

FILED DATE: 10/20/2022 3:08 PM 2022CH09803

5. I have no office or other presence in Illinois for the practice of law.

6. I submit to the disciplinary authority of the Supreme Court of Illinois;

7. I have undertaken to become familiar with and to comply, as if admitted to practice in Illinois, with the rules of the Supreme Court of Illinois, including the Illinois Rules of Professional Conduct and the Supreme Court Rules on Admission and Discipline of Attorneys, and other Illinois law and practices that pertain to the proceeding;

(8) The full name, business address and ARDC number of the Illinois attorney with whom I have associated in the matter is:

Brandon M. Wise – ARDC/IL Bar #6319580
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
818 Lafayette Avenue, Floor 2
St. Louis, MO 63104
Ph: (314) 833-4825
Email: bwise@peifferwolf.com

9. I certify that I have served this Statement upon the Administrator of the ARDC and all parties in the above-captioned docket, and that these parties are all entitled to service under this rule.

**VERIFICATION**

I verify the accuracy and completeness of each of the above statements.

Sonal Jain

Date: October 20, 2022

FILED DATE: 10/20/2022 3:08 PM 2022CH09803

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of October, 2022, I filed the foregoing document with the clerk of the Court using the Illinois E-Filing System and served a true and correct copy of the foregoing to the following parties via USPS Certified Mail:

| | |
|---|---|
| Match Group, Inc.<br>The Corporation Trust Company,<br>Corporation Trust Center,<br>1209 Orange Street,<br>Wilmington, DE 19801 | Match Group, LLC<br>The Corporation Trust Company,<br>Corporation Trust Center,<br>1209 Orange Street,<br>Wilmington, DE 19801 |
| Tinder, Inc.<br>The Corporation Trust Company,<br>Corporation Trust Center,<br>1209 Orange Street,<br>Wilmington, DE 19801 | Brandon Wise, Esq.<br>PEIFFER WOLF CARR KANE<br>CONWAY & WISE, LLP<br>818 Lafayette Avenue, Floor 2<br>St. Louis, MO 63104 |
| Vanessa Guzman<br>328 E 171st Pl<br>South Holland, IL 60473 | Kasie Sedwick<br>PO Box 426<br>Irvington, IL 62848 |
| Nicole Demonte<br>3639 N Pine Grove Ave #20G<br>Chicago, IL 60613 | Ainsley Jacobson<br>6317 North Broadway Street<br>Chicago, IL 60660 |
| Brandy Luker<br>230 West Elm Street<br>Canton, IL 61520 | Bria Handle<br>8530 S Dorchester<br>Chicago, IL 60619 |

and by Email to the Illinois ARDC at Rule707@iardc.org.

/s/ Sonal Jain
Sonal Jain

FILED DATE: 10/20/2022 3:08 PM 2022CH09803

# Appellate Division of the Supreme Court of the State of New York Second Judicial Department

I, Maria T. Fasulo, Clerk of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, do hereby certify that

Sonal Jain

was duly licensed and admitted to practice as an Attorney and Counselor at Law in all the courts of this State on **June 24, 2021**, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors at Law on file in this office, is duly registered with the Administration Office of the Courts, and according to the records of this Court is currently in good standing as an Attorney and Counselor-at-Law.

In Witness Whereof, I have hereunto set my hand in the City of Brooklyn on October 5, 2022.

Maria T. Fasulo

Clerk of the Court

CertID-00086225

Phone : +91-11-41752340, 45603795
+91-11-45603739, 43559586
E-mail : barcouncilofdelhi@rediffmail.com
Web. : www.delhibarcouncil.com

FILED DATE: 10/20/2022 3:08 PM 2022CH09803

# BAR COUNCIL OF DELHI

(Statutory Body Constituted under the Advocates Act, 1961)

2/6, Siri Fort Institutional Area, Khel Gaon Marg, New Delhi-110 049

Ref. No. : cpd84/1801/2022

Dated : 15/10/2022

## TO WHOMSOEVER IT MAY CONCERN

*This is to certify that* ***Ms. Sonal Jain****, daughter of Mr. Mahesh Jain, resident of B-8/6099, Vasant Kunj, Delhi-110070* ***(INDIA)****, as per the records maintained by this Council, was provisionally enrolled as an Advocate on* ***29th November, 2019*** *vide enrolment No.* ***D/9707/2019****, which is valid upto* ***28.11.2021****. However due to covid pandemic BCI vide notification item no. 353/2020, resolved to exempt the period from* ***24th March 2020*** *to* ***31st March 2021*** *from the two years period. Hence her enrolment stays valid upto till* ***28.11.2022*** *and as of now, Bar Council of Delhi has not received any complaint or adverse remark against her.*

***Col. Arun Sharma (Retd.)***
***Secretary***

*(Vinay Kumar)*
*Prepared & Checked by*

FILED
10/21/2022 1:44 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
19995627

FILED DATE: 10/21/2022 1:44 PM 2022CH09803

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| BRIA RANDLE, et al., individually and on behalf of all others similarly situated | ) | |
| *Plaintiffs,* | ) | |
| v. | ) | Case No. 2022CH09803 |
| MATCH GROUP, INC., MATCH GROUP, LLC, and TINDER, INC. | ) | |
| *Defendants.* | ) | |

**VERIFIED STATEMENT OF OUT-OF-STATE ATTORNEY**
**PURSUANT TO SUPREME COURT RULE 707**

I, Mason A. Barney, submit this Verified Statement pursuant to Illinois Supreme Court Rule 707.

1. My full name is Mason A. Barney, my date of birth is February 15, 1977. The address of offices from which I practice law and related email address and telephone numbers are as follows:

SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone: (212) 532-1091
Email: mbarney@sirillp.com

2. I represent Plaintiffs Bria Randle, Vanessa Gusman, Kasie Sedwick, Nicole DeMonte, Ainsley Jacobson, and Brandy Luker in *Randle et. al., v. Match Group, Inc. et. al.*, in the Chancery Division of the Circuit Court of Cook County, Illinois; Case No. 2022-CH-09803:

3(a). I list below all proceedings in which I have filed an appearance pursuant to this rule in this calendar year.

*Rebecca White and Kristen Yukna, et al. v. Cooler Screens, Inc.*; Circuit Court of Cook County, Illinois, Chancery Division; Case No. 2022CH05810

3(b). My ARDC registration number is 6341425.

4(a). I list each jurisdiction of admission, including any state, territory, or commonwealth of the United States, the District of Columbia, or in a foreign country, and my full admission name and license number.

FILED DATE: 10/21/2022 1:44 PM 2022CH09803

Mason A. Barney, State of New York; License No. 4405809

4(b). I attach a letter or certificate of good standing for each of the jurisdictions listed in paragraph 4(a) above.

5. I have no office or other presence in Illinois for the practice of law.

6. I submit to the disciplinary authority of the Supreme Court of Illinois;

7. I have undertaken to become familiar with and to comply, as if admitted to practice in Illinois, with the rules of the Supreme Court of Illinois, including the Illinois Rules of Professional Conduct and the Supreme Court Rules on Admission and Discipline of Attorneys, and other Illinois law and practices that pertain to the proceeding;

(8) The full name, business address and ARDC number of the Illinois attorney with whom I have associated in the matter is:

Brandon M. Wise – ARDC/IL Bar #6319580
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
818 Lafayette Avenue, Floor 2
St. Louis, MO 63104
Ph: (314) 833-4825
Email: bwise@peifferwolf.com

9. I certify that I have served this Statement upon the Administrator of the ARDC and all parties in the above-captioned docket, and that these parties are all entitled to service under this rule.

**VERIFICATION**

I verify the accuracy and completeness of each of the above statements.

Mason A. Barney

Date: October 20 , 2022

FILED DATE: 10/21/2022 1:44 PM 2022CH09803

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of October, 2022, I filed the foregoing document with the clerk of the Court using the Illinois E-Filing System and served a true and correct copy of the foregoing to the following parties via USPS Certified Mail:

| | |
|---|---|
| Match Group, Inc.<br>The Corporation Trust Company,<br>Corporation Trust Center,<br>1209 Orange Street,<br>Wilmington, DE 19801 | Match Group, LLC<br>The Corporation Trust Company,<br>Corporation Trust Center,<br>1209 Orange Street,<br>Wilmington, DE 19801 |
| Tinder, Inc.<br>The Corporation Trust Company,<br>Corporation Trust Center,<br>1209 Orange Street,<br>Wilmington, DE 19801 | Brandon Wise, Esq.<br>PEIFFER WOLF CARR KANE<br>CONWAY & WISE, LLP<br>818 Lafayette Avenue, Floor 2<br>St. Louis, MO 63104 |
| Vanessa Gusman<br>328 E 171st Pl<br>South Holland, IL 60473 | Kasie Sedwick<br>PO Box 426<br>Irvington, IL 62848 |
| Nicole Demonte<br>3639 N Pine Grove Ave #20G<br>Chicago, IL 60613 | Ainsley Jacobson<br>6317 North Broadway Street<br>Chicago, IL 60660 |
| Brandy Luker<br>230 West Elm Street<br>Canton, IL 61520 | Bria Randle<br>8530 S Dorchester<br>Chicago, IL 60619 |

and by Email to the Illinois ARDC at Rule707@iardc.org.

/s/ Mason A. Barney
Mason A. Barney

FILED DATE: 10/21/2022 1:44 PM 2022CH09803

*Appellate Division of the Supreme Court*
*of the State of New York*
*Second Judicial Department*

---

*I, Maria T. Fasulo, Clerk of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, do hereby certify that*

*Mason Adams Barney*

*was duly licensed and admitted to practice as an Attorney and Counselor at Law in all the courts of this State on* ***June 21, 2006,*** *has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors at Law on file in this office, is duly registered with the Administration Office of the Courts, and according to the records of this Court is currently in good standing as an Attorney and Counselor-at-Law.*

*In Witness Whereof, I have hereunto set my hand in the City of Brooklyn on August 31, 2022.*

Maria T. Fasulo

*Clerk of the Court*

*CertID-00081376*

FILED DATE: 10/21/2022 1:44 PM 2022CH09803

Appellate Division
Supreme Court of the State of New York
Second Judicial Department
45 Monroe Place
Brooklyn, N.Y. 11201
(718) 875-1300

HECTOR D. LASALLE
Presiding Justice

MARIA T. FASULO
Clerk of the Court

DARRELL M. JOSEPH
Deputy Clerks

KENNETH BAND
MELISSA KRAKOWSKI
WENDY STYNES
Associate Deputy Clerks

To Whom It May Concern

An attorney admitted to practice by this Court may request a certificate of good standing, which is the only official document this Court issues certifying to an attorney's admission and good standing.

An attorney's registration status, date of admission and disciplinary history may be viewed through the attorney search feature on the website of the Unified Court System.

New York State does not register attorneys as active or inactive.

An attorney may request a disciplinary history letter from the Attorney Grievance Committee of the Second Judicial Department.

Bar examination history is available from the New York State Board of Law Examiners.

Instructions, forms and links are available on this Court's website.

Maria T. Fasulo
Clerk of the Court

Revised January 2022

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 2

FILED
10/28/2022 10:08 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
20084306

FILED DATE: 10/28/2022 10:08 AM 2022CH09803

IN THE COOK COUNTY CIRCUIT COURT, STATE OF ILLINOIS

**BRIA RANDLE**

Plaintiff/Petitioner

vs.

**MATCH GROUP, INC; MATCH GROUP, LLC; TINDER, INC**

Defendant/Respondent

Case No.: **2022CH09803**

AFFIDAVIT OF SERVICE OF
**SUMMONS; AFFIDAVIT; COMPLAINT**

I, **Jerrold Allen**, depose and say the following:

I certify that I am over the age of eighteen. I am not a party to the above action. I am a registered employee of ABC Legal Services, LLC 633 Yesler Way Seattle, WA 98104 License No 117-001765 or I am a registered private detective or a registered employee of a private detective agency.

On the **28th day of October, 2022 at 9:01 AM**, I, **Jerrold Allen**, **SERVED Match Group, Inc.** at **1209 North Orange Street, Wilmington, New Castle County, DE 19801** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Patrick Duffy** , on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Patrick Duffy who indicated they were the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white male contact 35-45 years of age, 5'6"-5'8" tall and weighing 160-180 lbs.**

Service Fee Total: **$135.00**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit are true and correct.

NAME: [signature] 10/28/2022

Jerrold Allen Server ID # Date

REF: **REF-11197418**

Tracking #: **0095716165**

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 2

FILED
10/28/2022 11:22 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
20087241

FILED DATE: 10/28/2022 11:22 AM 2022CH09803

IN THE COOK COUNTY CIRCUIT COURT, STATE OF ILLINOIS

**BRIA RANDLE; ET AL**
Plaintiff/Petitioner

vs.

**MATCH GROUP, INC; ET AL**
Defendant/Respondent

Case No.: **2022CH09803**

AFFIDAVIT OF SERVICE OF
**SUMMONS; COMPLAINT; RULE 222(B) AFFIDAVIT**

I, **Jerrold Allen**, depose and say the following:

I certify that I am over the age of eighteen. I am not a party to the above action. I am a registered employee of ABC Legal Services, LLC 633 Yesler Way Seattle, WA 98104 License No 117-001765 or I am a registered private detective or a registered employee of a private detective agency.

On the **28th day of October, 2022 at 9:05 AM**, I, **Jerrold Allen**, **SERVED Tinder, Inc. c/o The Corporation Trust Company,, REGISTERED AGENT** at **1209 N Orange St, Wilmington, New Castle County, DE 19801** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **The Corporation Trust Company,, REGISTERED AGENT**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to The Corporation Trust Company,, REGISTERED AGENT with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white male contact 35-45 years of age, 5'6"-5'8" tall and weighing 160-180 lbs.**

Service Fee Total: **$135.00**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit are true and correct.

NAME: [signature] 10/28/2022

Jerrold Allen | Server ID # | Date

REF: **REF-11197607**

Tracking #: **0095727710**



Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 2

FILED
10/28/2022 11:25 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
20087335

FILED DATE: 10/28/2022 11:25 AM 2022CH09803

IN THE COOK COUNTY CIRCUIT COURT, STATE OF ILLINOIS

| | |
|---|---|
| **BRIA RANDLE; ET AL** Plaintiff/Petitioner | Case No.: **2022CH09803** |
| vs. **MATCH GROUP, INC; ET AL** Defendant/Respondent | AFFIDAVIT OF SERVICE OF **SUMMONS; COMPLAINT; RULE 222(B) AFFIDAVIT** |

I, **Jerrold Allen**, depose and say the following:

I certify that I am over the age of eighteen. I am not a party to the above action. I am a registered employee of ABC Legal Services, LLC 633 Yesler Way Seattle, WA 98104 License No 117-001765 or I am a registered private detective or a registered employee of a private detective agency.

On the **28th day of October, 2022 at 9:02 AM**, I, **Jerrold Allen**, **SERVED Match Group, LLC c/o The Corporation Trust Company,, REGISTERED AGENT** at **1209 N Orange St, Wilmington, New Castle County, DE 19801** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **The Corporation Trust Company,, REGISTERED AGENT**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to The Corporation Trust Company,, REGISTERED AGENT with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white male contact 35-45 years of age, 5'6"-5'8" tall and weighing 160-180 lbs.**

Service Fee Total: **$135.00**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit are true and correct.

NAME: [signature] 10/28/2022

Jerrold Allen Server ID # Date

REF: **REF-11197514**

Tracking #: **0095727620**

FILED
11/2/2022 1:02 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
20146547

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

BRIA RANDLE, VANESSA GUSMAN, KASIE SEDWICK, NICOLE DEMONTE, AINSLEY JACOBSON, and BRANDY LUKER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs*,

v.

MATCH GROUP, INC., MATCH GROUP, LLC, and TINDER, INC.

*Defendants*.

Case No.: 2022CH09803

Judge: Raymond W. Mitchell

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND REQUEST FOR DISCOVERY ON CERTIFICATION ISSUES**

In this case, Bria Randle, Vanessa Gusman, Kasie Sedwick, Nicole DeMonte, Ainsley Jacobson, and Brandy Luker (hereinafter "Plaintiffs") allege that Defendants Match Group, Inc., Match Group LLC, and Tinder, Inc. (hereinafter "Defendants") systematically violated the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. This case is well suited for class certification pursuant to 735 ILCS 5/2-801. Specifically, Plaintiffs seek to certify a class consisting of several hundred or more individuals who had their biometrics collected, captured, and/or stored by Defendants in the State of Illinois during the applicable statutory period in violation of BIPA. The question of liability is a legal question that can be answered in one fell swoop. As Plaintiffs' claims and the claims of similarly-situated individuals all arise from Defendants' uniform policies and practices, they satisfy the requirement of 735 ILCS 5/2-801 and should be certified. Notably, to Plaintiffs' Counsels' knowledge, the only BIPA class certification decisions issued to date have granted class certification. See, *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018)

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

(granting class certification) *aff'd Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019); and Ex. A, Mem. and Order, *Roberson v. Symphony Post Acute Care Network, et al.*, 17-L-733 (St. Clair County) (same).

Plaintiffs move for class certification to protect members of the proposed class, individuals whose proprietary and legally protected personal and private biometric data was invaded by Defendants. Plaintiffs believe that the evidence and argumentation submitted with this motion are sufficient to allow the class to be certified now. However, in the event the Court (or Defendants) wishes for the parties to undertake formal discovery prior to the Court's consideration of this motion, Plaintiffs request that the Court allow Plaintiffs to supplement their briefing and defer the response and reply deadlines.

## I. RELEVANT BACKGROUND

### A. The Biometric Information Privacy Act

Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

The Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* was enacted in 2008, arising from concerns that these experimental uses of finger-scan technologies created a "very serious need of protections for the citizens of Illinois when it comes to biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. Under the Act, it is unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless it first:

> (1) Informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

> (2) Informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) Receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

Although there may be benefits with using biometrics, there are also serious risks. Unlike ID badges – which can be changed or replaced if stolen or compromised – biometrics, including face scans, are unique, permanent biometric identifiers associated with each individual. These biometrics are biologically unique to the individual; once compromised, the individual has ***no*** means by which to prevent identity theft, unauthorized tracking, or other unlawful or improper use of this information. This exposes individuals to serious and irreversible privacy risks. For example, if a biometric database is hacked, breached, or otherwise exposed – as in the Equifax, Uber, or thousands of other data breaches – individuals have no means to prevent the misappropriation and theft of their proprietary biometric makeup. Thus, recognizing the need to protect its citizens from harms like these, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

**B. <u>Factual Allegations</u>**

Plaintiffs filed this class action against Defendants on October 3, 2022, to redress Defendants' unlawful collection, use, storage, and disclosure of biometric information of Illinois citizens under BIPA. Defendant's app, Tinder, is a dating app for Android and iOS. (Complaint ¶ 18.). In their Class Action Complaint, Plaintiffs allege that Tinder offers Photo Verification to make sure that a person on the account matches their photos. Photos verified in this way include a blue checkmark. (*Id.* ¶ 22.). A user uploads a video selfie to the Tinder app, which then uses a technology called 3D Face

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

Authentication to detect the user's face in their video selfie and their profile picture and by mapping the user's facial geometry it compares the video selfie with the profile picture. (*Id.* ¶ 23.)

In their Class Action Complaint, Plaintiffs further allege that Defendants' collection of face-based biometrics continue to violate BIPA because the Tinder app is not: (1) informing individuals in writing of the purpose and length of time for which face scan(s) were being collected, stored and used; (2) providing a publicly available retention schedule or guidelines for permanent destruction of the data; and (3) obtaining a written release, as required by BIPA. *See* Complaint ("Compl.") at ¶¶ 19-25, 33-34, 49-60, 71-73, 92-93, 100-102.

Accordingly, Defendants' practices violated BIPA. As a result of Defendants' violations, Plaintiffs and similarly-situated individuals were subject to Defendants' uniform policies and practices and were victims of its scheme to unlawfully collect, store, and use individuals' biometric data in direct violation of BIPA.

Plaintiffs now seek class certification for the following similarly-situated individuals, defined as:

> All Illinois residents who directly or indirectly used Defendants' biometric authentication products and subsequently had his or her biometric facial scan captured, collected, stored, or otherwise obtained by Defendants during the applicable statutory period.

*Id.* at ¶ 82.

Given Defendants' standard practices defined above and the straightforward and common legal questions presented in this case, Plaintiffs now move for class certification. Notably, this motion is being filed shortly after the Complaint was filed and before the Defendants have responded. For the reasons discussed herein, Plaintiffs' request should be granted.

## II. STANDARD FOR CLASS CERTIFICATION

"The basic purpose of a class action is the efficiency and economy of litigation." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App. (1st) 131465, ¶ 9 (Ill. App. Ct. May 8, 2015) (citing *Miner v.*

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

*Gillette Co.*, 87 Ill. 2d 7, 14 (1981)). "In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true and should err in favor of maintaining class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007)). Under Section 2-801 of the Code of Civil Procedure, a class may be certified if the following four requirements are met:

(1) the class is so numerous that a joinder of all members is impracticable;

(2) there are questions of fact or law common to the class that predominate over any questions affecting only individual members;

(3) the representative parties will fairly and adequately protect the interest of the class; and

(4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

*See Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 447 (2006) (citing 735 ILCS 5/2-801). Notably, "[a] trial court has broad discretion in determining whether a proposed class meets the requirements for class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez*, 378 Ill. App. 3d at 53). Here, the allegations and facts in this case amply demonstrate that the four certification factors are met.

## III. ARGUMENT

Plaintiffs' claims here are especially suited for class certification because Defendants treated all class members identically for the purposes of applying BIPA. All of the putative class members in this case were uniformly subjected to the same illegal and unlawful collection, storage, and use of their biometric data by Defendants throughout the class period. Plaintiffs meet each of the statutory requirements for maintenance of this suit as a class action. Thus, the class action device is ideally suited and is far superior to burdening the Court with many individual lawsuits to address the same issues, undertake the same discovery, and rely on the same testimony.

### A. The Class Is So Numerous That Joinder of All Members Is Impracticable.

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

Numerosity is not dependent on plaintiffs setting forth a precise number of class members or a listing of their names. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("Of course, plaintiffs need not demonstrate a precise figure for the class size, because a good-faith, nonspeculative estimate will suffice; rather, plaintiffs need demonstrate only that the class is sufficiently numerous to make joinder of all of the members impracticable.") (internal citations omitted); *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 710-11 (1st Dist. 1981) ("It is not necessary that the class representative name the specific individuals who are possibly members of the class."). Courts in Illinois generally find numerosity when the class is comprised of at least 40 members. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. Loan Ass'n*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990).

In the present case, Tinder is an app with millions of paying users and a large base of users in Illinois,[1] as such there can be no serious dispute that Plaintiffs meet the numerosity requirement. The class of potential plaintiffs is sufficiently large to make joinder impracticable. As result of Defendants' violations of BIPA, Plaintiffs and all similarly situated individuals were subject to Defendants' uniform policies and practices and were victims of Defendants' schemes to unlawfully collect, store and use their extremely personal and private biometric data in direct violation of BIPA. The precise number in the class cannot be determined until discovery records are obtained from Defendants. Nevertheless, class membership can be easily determined by reviewing Defendants' records. A review of Defendants' files regarding the collection, storage and use of biometric data performed during the class period is all that is needed to determine membership in Plaintiffs' proposed classes. *See e.g., Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 233 (1st Dist. 2010) (reversing Circuit Court's denial of class certification and holding that class was certifiable over defendants' objection that "the proposed class

[1] Match Group, Inc. Form 10-k, p. 6 (Dec. 31. 2021) *available at* https://s22.q4cdn.com/279430125/files/doc_financials/2020/ar/Match-Group-2021-Annual-Report-to-Stockholders_vF.pdf

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

was not ascertainable, because the process of reviewing defendants' transaction files to determine class membership would be burdensome"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539-40 (6th Cir. 2012)[2] (rejecting the argument that manual review of files should defeat certification agreeing with district court's reasoning that, if manual review was a bar, "defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained," and citing numerous courts that are in agreement); *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003, at *7 (D. Ariz. Aug. 12, 2009) ("Even if it takes a substantial amount of time to review files and determine who is eligible for the [denied] discount, that work can be done through discovery"). Once Defendants' records are obtained, the Court will know the precise number of persons affected.

Absent certification of this class action, putative class members may never know that their legal rights have been violated and as a result may never obtain the redress to which they are entitled under BIPA. Illinois courts have noted that denial of class certification where members of the putative class have no knowledge of the lawsuit may be the "equivalent of closing the door of justice" on the victims. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Assn.*, 198 Ill.App.3d 445, 452 (5th Dist. 1990). Further, recognizing the need to protect its citizens from harms such as identity theft, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. A class action would help ensure that Plaintiffs and all other similarly-situated individuals have a means of redress against Defendants for its widespread violations of BIPA.

2 "Section 2-801 is patterned after Rule 23 of the Federal Rules of Civil Procedure and, because of this close relationship between the state and federal provision, 'federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois.'" *Cruz*, 383 Ill. App. 3d at 761 (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill.2d 100, 125 (2005)).

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

**B. Common Questions Of Law And Fact Exist That Predominate Over Any Questions Solely Affecting Individual Members Of The Class.**

Courts analyze commonality and predominance under Section 2-801 by identifying the substantive issues that will control the outcome of the case. *See Bemis v. Safeco Ins. Co. of Am.*, 407 Ill. App. 3d 1164, 1167 (5th Dist. 2011); *Cruz*, 383 Ill. App. 3d at 773. The question then becomes whether those issues will predominate and whether they are common to the class, meaning that "favorable adjudication of the claims of the named plaintiffs will establish a right of recovery in other class members." *Cruz*, 383 Ill. App. 3d at 773. As stated by the Court of Appeals, the question is will "common . . . issues be the subject of the majority of the efforts of the litigants and the court[?]" *Bemis*, 407 Ill. App. 3d at 1168. The answer here is "yes."

At the heart of this litigation is the culpable conduct of the Defendants under BIPA. The issues are simple and straightforward legal questions that plainly lend themselves to class-wide resolution. Notwithstanding the clear and unequivocal requirements of the law, Defendants disregarded Plaintiffs' and other similarly-situated individuals' statutorily-protected privacy rights and unlawfully collected, stored, and used their biometric data in direct violation of BIPA. Specifically, Defendants have violated BIPA because it failed to: (1) inform Plaintiffs or the putative class in writing of the specific purpose and length of time for which their biometrics were being collected, stored, and used, as required by BIPA; (2) provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and the putative class's biometrics, as required by BIPA; and (3) receive a written release from Plaintiffs or the putative class to collect, capture, or otherwise obtain their biometrics, as required by BIPA. Additionally, Defendants unlawfully profited from the use of Plaintiffs' and Class Members' biometrics. Defendants treated the entire proposed class in precisely the same manner, resulting in identical violations of BIPA. These common biometric-collection practices create common issues of law and fact. In fact, the legality of Defendants' collection, storage, and use of biometric data is the focus of this litigation.

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

Indeed, once this Court determines whether Defendants' practice of collecting, storing, and using individuals' biometric data without adhering to the specific requirements of BIPA constitutes violations thereof, liability for the claims of class members will be determined in one stroke. The material facts and issues of law are substantially the same for the members of the class, and therefore these common issues could be tried such that proof as to one claimant would be proof as to all members of the class. This alone establishes predominance. The only remaining questions will be whether Defendants' violations caused members of the class to suffer damages and the proper measure of damages and injunctive relief, which in and of themselves are questions common to the class. Accordingly, a favorable adjudication of the Plaintiffs' claims in this case will establish a right of recovery to all other class members, and thus the commonality and predominance requirements weigh in favor of certification of the class.

**C. The Named Plaintiffs and Class Counsel Are Adequate Representatives of The Class.**

When evaluating adequacy, courts look to whether the named plaintiffs have the same interests as those of the class and whether he or she will fairly represent them. *See CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 16. In this case, Plaintiffs' interest arises from statute. The class representatives, Bria Randle, Vanessa Gusman, Kasie Sedwick, Nicole DeMonte, Ainsley Jacobson, and Brandy Luker, are members of the proposed class and will fairly and adequately protect the class's interests. Plaintiffs are customers of Defendants and used Defendants' "Photo Verification" and "Liveness Check" which allows its customers to authenticate themselves in their video selfies to pass through the Liveness Check and 3d Face Authentication by using biometric authentication. Each time Plaintiffs used the "Photo Verification" and "Liveness Check" platform, the Defendants unlawfully collected their biometrics. Plaintiffs were never made aware of any publicly available BIPA policy. Further, Plaintiffs were never provided the information required by BIPA from Defendants. Plaintiffs have never been informed of the specific limited purposes or length of time for which Defendants collected, stored,

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

or used her biometrics. Plaintiffs have never been informed of any biometric data retention policy developed by Defendants, nor have they ever been informed of whether Defendants will ever permanently delete their biometrics. Plaintiffs have never been provided with, nor have they ever signed, a written release allowing Defendants to collect, capture, store, or otherwise obtain their facial scan or facial geometry biometrics. Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein. Thus, Plaintiffs were victims of the same uniform policies and practices of Defendants as the individuals they seek to represent and are not seeking any relief that is potentially antagonistic to other members of the class. What is more, Plaintiffs have the interests of those class members in mind, as demonstrated by their willingness to sue on a class-wide basis and step forward as the class representatives, which subjects Plaintiffs to discovery. This qualifies Plaintiffs as conscientious representative plaintiffs and satisfies the adequacy of representation requirement.

Proposed Co-Lead Class Counsel, Brandon Wise of Peiffer Wolf Carr Kane Conway & Wise, LLP ("PWCKCW") and Mason Barney of Siri & Glimstad, LLP ("Siri"), will also fairly and adequately represent the class. Proposed Class Counsel are highly qualified and experienced attorneys. (*See* Exhibit B - PWCKCW Firm Resume; Exhibit C Siri Firm Resume). Proposed Co-Lead Class Counsel, are recognized attorneys in class action lawsuits and have been designated as class counsel in numerous class actions in state and federal courts. (*Id.*). Thus, proposed Class Counsel are adequate and have the ability and resources to manage this lawsuit.

**D. <u>A Class Action Is The Appropriate Method For Fair And Efficient Adjudication Of This Controversy.</u>**

Finally, a class action is the most appropriate method for the fair and efficient adjudication of this controversy, rather than bringing individual suits which could result in inconsistent determinations and unjust results. "It is proper to allow a class action where a defendant is alleged to have acted wrongfully in the same basic manner toward an entire class." *P.J.'s Concrete Pumping Service, Inc. v.*

FILED DATE: 11/2/2022 1:02 PM   2022CH09803

*Nextel West Corporation*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "The purported class representative must establish that a successful adjudication of its individual claims will establish a right of recovery or resolve a central issue on behalf of the class members." *Id.*

Here, Plaintiffs' claims stem from Defendants' common and uniform policies and practices, resulting in common violations of BIPA for all members of the class. Thus, class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. *Wenthold v. AT&T Technologies, Inc.*, 142 Ill. App. 3d 612 (1st Dist. 1986). Without a class, the Court would have to hear dozens of additional individual cases raising identical questions of liability. Moreover, class members are better served by pooling resources rather than attempting to litigate individually. *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶¶ 28-30 (certifying TCPA class where statutory damages were alleged and rejecting arguments that individual lawsuits would be superior). In the interests of justice and judicial efficiency, it is desirable to concentrate the litigation of all class members' claims in a single forum. For all of these reasons, the class action is the most appropriate mechanism to adjudicate the claims in this case.

**E.     In The Event The Court Or Defendants Seeks More Factual Information Regarding This Motion, The Court Should Allow Supplemental And Deferred Briefing Following Discovery.**

There is no meaningful need for discovery for the Court to certify a class in this matter; Defendants' practices and policies are uniform. If, however, the Court wishes for the Parties to engage in discovery, the Court should keep the instant motion pending during the discovery period, allow Plaintiffs to file a supplemental brief, and defer Defendants' response and Plaintiffs' reply. Plaintiffs are moving as early as possible for class certification in part to avoid the "buy-off problem," which occurs when a defendant seeks to settle with a class representative on individual terms in an effort to moot the class claims asserted by the class representative. Plaintiffs are also moving for class certification now because the class should be certified, and because no meaningful discovery is

FILED DATE: 11/2/2022 1:02 PM    2022CH09803

necessary to establish that fact. The instant motion is far more than a placeholder or barebones memorandum. Rather, Plaintiffs' full arguments are set forth based on the facts known at this extremely early stage of litigation. Should the Court wish for more detailed factual information, the briefing schedule should be extended.

## IV.    Conclusion

For the reasons stated above, Plaintiffs respectfully request that the Court enter an Order: (1) certifying Plaintiffs' claims as a class action; (2) appointing Plaintiffs as Class Representatives; (3) appointing Brandon Wise of Peiffer Wolf Carr Kane Conway & Wise LLP and Mason Barney of Siri & Glimstad, LLP as Class Counsel; and (4) authorizing court-facilitated notice of this class action to the class. In the alternative, this Court should allow discovery, allow Plaintiffs to supplement this briefing, and defer response and reply briefs.

Dated: November 2, 2022

Respectfully Submitted:

By: */s/ Brandon M. Wise*
Brandon M. Wise – IL Bar # 6319580
Paul A. Lesko – IL Bar # 6288806
Adam Florek – IL Bar # 6320615
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@peifferwolf.com
Email: plesko@peifferwolf.com
Email: aflorek@peifferwolf.com

Mason A. Barney, Esq.
(*pro hac vice to be filed*)
Sonal Jain, Esq.
(*pro hac vice to be filed*)
**SIRI & GLIMSTAD LLP**
745 Fifth Ave, Suite 500,

FILED DATE: 11/2/2022 1:02 PM    2022CH09803

New York, NY 10151
Tel: (212) 532-1091
mbarney@sirillp.com
sjain@sirillp.com

COUNSEL FOR THE PLAINTIFFS AND
THE PUTATIVE CLASS

FILED DATE: 11/2/2022 1:02 PM   2022CH09803

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I filed the foregoing document with the clerk of the Court using the Illinois E-Filing System, which should further distribute a true and accurate copy of the foregoing to all counsel of record.

*/s/ Brandon M. Wise*

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 2

FILED
11/2/2022 1:02 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
20146547

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

# EXHIBIT A

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

SAROYA ROBERSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SYMPHONY POST ACUTE CARE NETWORK; SYMPHONY SYCAMORE LLC; SYMPHONY HEALTHCARE LLC; SYMPHONY M.L. LLC; SYMPHONY MONARCH HOLDINGS, LLC; and DOE DEFENDANTS 1-100,

Defendants.

Case No. 17 -L- 733

FILED
ST. CLAIR COUNTY
MAR 12 2019
35 CIRCUIT CLERK

**MEMORANDUM AND ORDER**
**ON CLASS CERTIFICATION**

The case comes before the Court on Plaintiff's Motion for Class Certification ("Motion"). The issues have been briefed and argued by the parties.[1] The Court hereby **ORDERS**:

## I. NATURE OF THE CASE AND PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.

Plaintiff Saroya Roberson worked at a nursing home in Swansea, Illinois. Plaintiff alleges that as part of timekeeping while she worked at this location, Defendants and others captured her biometric information or biometric identifiers (a palm scan) within the meaning of the Illinois Biometric Privacy Information Act, 740 ILCS 14/1 ("BIPA"). Defendants' opposition brief does not dispute Roberson's biometric information or biometric identifiers were so captured.

BIPA manifests the Illinois General Assembly's findings that:

[1] Arguments were heard on December 20, 2018 before Judge Julia R. Gomric. On February 8, 2019, after hearing, but before Judge Gomric ruled on the pending Motion for Class Certification, the court granted Symphony Sycamore LLC's Motion for Substitution as a Matter of Right, and this case was subsequently assigned to the undersigned. The court has reviewed the court file and report of proceedings held on December 20, 2018 and is ready to proceed without the need for additional hearing.

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

(1) Biometrics are uniquely sensitive identifiers. "Biometrics are unlike other unique identifiers . . . [and] are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

(2) Biometric technology is a new frontier subject to unpredictable developments. "The full ramifications of biometric technology are not fully known." *Id.* at § 14/5(f).

(3) People are apprehensive of transactions involving their biometrics. The "overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information" and are "deterred from partaking in biometric identifier-facilitated transactions." *Id.* at § 14/5(d)-(e).

(4) Regulation of biometric collection, use, and storage serves the public interest. The "public welfare, security and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* at § 14/5(g).

Accordingly, BIPA puts certain requirements on parties dealing with biometric identifiers or biometric information, including:

> (b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/5(b) (2018).

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

Plaintiff alleges none of these requirements were met when capturing her biometric information. Defendants' opposition to the Motion does not dispute this.

BIPA further provides a right of action for violations of its requirements:

> Sec. 20. Right of action. Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court . . . against an offending party. A prevailing party may recover for each violation:
>
> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; . . . .

740 ILCS 14/20 (2018). Plaintiff brought this action pursuant to these and other provisions of BIPA.

Plaintiff alleges the Swansea, Illinois location where her biometric identifiers were captured is part of a network, the Symphony Post Acute Network ("SPAN" or the "Network"). She seeks to certify a class of Illinois citizens who had their biometric information or biometric identifiers captured, collected, *etc.* at any Illinois location in the Network (and associated subclasses discussed below):

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*
>
> Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

## II. LAW REGARDING A DETERMINATION OF CLASS CERTIFICATION.

"In determining whether to certify a proposed class, the trial court . . . should avoid

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

deciding the underlying merits of the case or resolving unsettled legal questions." *CE Design Ltd. v. C & T Pizza, Inc.,* 2015 IL App (1st) 131465 (2015), ¶ 9. "In making its decision as to whether to certify a class, the court may consider any matters of fact or law properly presented by the record, which includes the pleadings, depositions, affidavits, answers to interrogatories, and any evidence that may be adduced at the hearings." *Bueker*, 2016 IL App (5th) 150282 at ¶ 22. "To determine whether the proposed class should be certified, the court accepts the allegations of the complaint as true." *Clark*, 343 Ill. App. 3d at 544-45. *See also CD Design*, 2015 IL App (1st) 131465 at ¶ 9 ("In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true . . . ."); *S37 Mgmt.*, 2011 IL App (1st) 102496 at ¶ 15 (same).

The factors which the Court must consider on a motion for class certification are the familiar framework established by statute. For a suit to proceed as a class action in Illinois, the Court must find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (2018). *See also e.g. Clark, et al. v. TAP Pharm. Prods., Inc., et al.,* 343 Ill. App. 3d 538, 544-45 (5th Dist. 2003).

## III. FIRST FACTOR: NUMEROSITY (735 ILCS 5-2/801(1)).

Section 801(1) requires not only that the number of plaintiffs be numerous, but also that joinder of plaintiffs in one individual action be impractical. 735 ILCS 5/2-801(1). Where there are a number of potential claimants, and the individual amount claimed by each is small,

FILED DATE: 11/2/2022 1:02 PM   2022CH09803

making redress on an individual level difficult, if not impossible, Illinois courts have been particularly receptive to proceeding on a class action basis. *Miner v. Gillette Co.*, 87 Ill.2d 7 (1981). Avoiding unnecessary burdens on the courts themselves is also a legitimate concern. "Affirming the trial court's class certification order will avoid the filing of numerous, repetitive cases placing a burden on the court." *Fakhoury v. Pappas*, 395 Ill. App. 3d 302, 316 (1st Dist. 2009).

Plaintiff states that Defendants have identified, at a minimum, 552 workers who would be members of the class from the Swansea, Illinois location alone. Defendants' opposition to the Motion does not dispute this; in fact, Defendants' opposition does not mention numerosity at all. Accordingly, the Court finds that the numerosity factor is satisfied. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. and Loan Ass'n*, 198 Ill. App. 3d 445 (5th Dist. 1990).

## IV.     SECOND FACTOR: COMMON AND PREDOMINANT ISSUES OF FACT OR LAW (735 ILCS 5-2/801(2)).

Section 801(2) requires "questions of fact or law common to the class." 735 ILCS 5/2-801(2) (2018). As the statute is phrased in the alternative, certification requires "only that there be either a predominating common issue of law or fact, not both." *Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67, 81 (1994).

Plaintiff suggests that a case presents common issues when defendants have engaged in the same or similar course of conduct, and that this is particularly true where – as here – the claims are based predominantly upon the application of a single statute or statutory scheme. "A common question may be shown when the claims of the individual class members are based upon the common application of a statute . . . ." *Clark*, 343 Ill. App. 3d at 548. *See also Bueker*, 2016 IL App (5th) 150282, ¶ 27 ("With regard to the commonality requirement, a common issue

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

may be shown where the claims of the individual class members are based upon the common application of a statute or where the proposed class members are aggrieved by the same or similar conduct or pattern of conduct."); *Hall*, 376 Ill. App. 3d at 831 (same).[2] Defendants' opposition to the Motion did not dispute this general premise.

Thus, according to Plaintiff, "Examination quickly establishes that commonality is easily satisfied in this case. All class members are citizens of Illinois. All are proceeding principally under a single Illinois statute, BIPA. Each was subjected to an identical course of conduct by defendants: The capture of their biometric information."

Plaintiff further goes on to enumerate specific questions of law or fact which she states will predominate:

a. Whether the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class?

b. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing that a biometric identifier or biometric information was being collected or stored?

c. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants inform the Plaintiff and the Class in writing of the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used?

d. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants receive a written release executed by the Plaintiff and the Class of the biometric identifier or biometric information or the Plaintiff's or Class' legally

---

[2] Bearing in mind that the court does not consider the merits at this stage, see *supra,* the Court also does not consider which class members will ultimately prevail. "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the class action.").

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

authorized representative?

e. If the Defendants captured, collected, stored or used the biometric information of the Plaintiff and the Class, did the Defendants develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first?

f. Whether Defendants' violations of BIPA were negligent, or instead, intentional or reckless, within the meaning of 740 ILCS 14/20?

Thus, Plaintiff summarizes: "Defendants' compliance with the requirements of BIPA – a single statutory scheme – is the central question in this case. This same question will predominate for each and every class member."

Defendants argue that common questions do not predominate in this case. Defendants assert that "'The purpose of the predominance requirement is to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation . . .' *Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 448 (2006)." According to Defendants, to satisfy this predominance requirement, a plaintiff must show that "successful adjudication of the class representative's individual claim 'will establish a right of recovery in other class members' such that 'all that should remain is for other class members to file proof of their claim., *Id.* (quotation omitted); *see also Mashal v. City of Chicago*, 2012 IL 112341, ¶33 (same)."

Defendants then go on to provide a list of issues they claim defeat commonality and predominance in this case:

a. whether a class member used the same type of "finger or hand print reader/scanner" that Roberson used,

FILED DATE: 11/2/2022 1:02 PM   2022CH09803

b.      whether a class member has suffered a sufficient injury to invoke BIPA's private right of action,

c.      whether a class member has suffered actual injury such that actual damages could be recovered in excess of the BIPA's liquidated damages,

d.      whether that injury exceeds the liquidated damages provision in BIPA,

e.      whether that injury was suffered at the hands of any person or business that is in fact "associated with the Symphony Post-Acute Care Network, a/k/a Symphony Post-Acute Network,"

f.      whether that entity acted negligently or willfully with respect to that particular class member,

g.      whether that class member's claim is subject to any affirmative defenses, like consent or ratification.

First, since the hearing on Plaintiff's Motion on December 20, 2018, the Supreme Court of Illinois has ruled that "an individual need not allege some injury or adverse effect, beyond violation of this or her right under [BIPA], in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, slip op. at p.13 (Ill. Jan. 25, 2019). As such, many of the arguments raised above are moot.

Moreover, it is well-established that by themselves, such issues do not defeat class certification. "Individual questions of injury and damages do not defeat class certification." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 832 (same). At most, if damage questions do present significant issues, they can be handled in ancillary proceedings. "It is appropriate to litigate the questions of law or fact common to all members of the class and, after the determination of the common questions, to determine in an ancillary proceeding or proceedings the questions that may be peculiar to individual class members." *Clark*, 343 Ill.

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

App. 3d at 548 (internal quotations omitted). In fact, Defendants' own cited authority establishes that these differences (if true) are generally not grounds to defeat class certification. *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 679 (2nd Dist. 2006). ("Moreover, we note that, generally, individual counterclaims or defenses do not render a case unsuitable for class action.")

More broadly, Defendants' characterization of the common issues in this case, and which of them will predominate, is questionable. *Smith* was a toxic tort case involving a train derailment, and then a resulting chemical spill, with all the attenuated questions as to proximate causation of bodily injury resulting from a complicated series of events. *Smith*, 233 Ill.2d 442-58. This is not that case. This case involves a single statutory scheme – BIPA – and the issues presented can be summarized in a straightforward way: Did the Network capture biometric information from members of the class, and if so, did they comply with BIPA while doing so? These questions are what will consume "the bulk of the time at trial." *Smith*, 233 Ill.2d at 458.

That BIPA's straightforward, statutory requirements may have been met in some cases, but not others, does not preclude class certification, as Defendants suggest. First, this invites the Court to determine the merits of the case, which the Court does not do at this stage, as has already been established.

Second, the fact that some class members may recover, but not all, is no impediment to class certification. "That some members of the class are not entitled to relief because of some particular factor will not bar the class action." *Clark*, 343 Ill. App. 3d at 549. *See also Hall*, 376 Ill. App. 3d at 831-32 ("That some members of the class are not entitled to relief will not bar the

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

class action.").

Third, the flexibility of the class action procedure ensures that even if the issues Defendants raise do become significant at some future point in time, the Court has the ability to address such matters then. "If individual damage determinations are necessary, the court can utilize various procedures to determine damages, including the creation of subclasses." *Bueker*, 2016 IL App (5th), ¶ 31 (citing *Hall*, 376 Ill. App. 3d at 832). "Furthermore, if the class becomes unmanageable at some later time in the litigation, the court always has the option to set aside the class certification or a portion of it." *Id.* (citing *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill.App.3d 1069, 1075 (1st Dist. 1988)).

Finally, while the Court finds that common questions of fact or law will predominate this case as a whole, it alternately finds that issue certification would be appropriate as well. Even in cases involving the most complex questions of injury or damages – and again, this is not that case, as it arises under a single simple statute – classes may be certified as to issues, such as legal issues, or the issue of liability. Even the cases Defendants themselves cite recognize this. *See e.g. Smith*, 223 Ill.2d at 457 ("the trial court in this case did not limit class certification to the issue of liability . . . ."); *Bueker*, 2016 IL App (5th) 150282, ¶ 34 (courts have the ability to limit certification for liability purposes only). Thus, in the alternative, the commonality and predominance of legal and liability issues in this case demonstrate it is also appropriately suited for certification as to common legal issues, and to issues concerning liability.

## V. THIRD FACTOR: ADEQUATE REPRESENTATION OF THE INTERESTS OF THE CLASS (735 ILCS 5-2/801(3)).

Section 801(3) requires that the "representative parties will fairly and adequately protect the interests of the class." 735 ILCS 5/2-801(2) (2018). Adequate representation has

FILED DATE: 11/2/2022 1:02 PM   2022CH09803

two components:   (1) adequacy of the named Plaintiff; and (2) adequacy of the named Plaintiff's attorneys. *See Miner v. Gillette Co.*, 87 Ill.2d 7 (1981).  As Defendant posits, "[t]he purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. *Walczak*, 365 Ill. App. 3d at 678.

Defendants do not argue that Plaintiff's attorneys are inadequate.  Accordingly, the Court accepts that they will provide proper, efficient, and appropriate protection of the interests of the class in presenting the claims.

Defendants do, however, challenge the adequacy of Plaintiff Roberson.  The principal argument made by Defendants is that the interests of Roberson are antagonistic to those of the class, as class members may want to seek a monetary award, and that (according to Defendants) during her deposition Roberson disclaimed any intention of seeking a monetary recovery.

This is wholly unpersuasive.  Plaintiff, by way of her pleadings, discovery responses, statements of her attorneys, and otherwise, has made it abundantly clear on multiple occasions that she seeks a monetary recovery in this action, not only on her own behalf, but also on behalf of the other class members.  Her deposition responses did not contradict that.  In fact, Plaintiff stated she wants the law (BIPA) enforced, and BIPA expressly provides for monetary awards.

The rest of Defendants' adequacy arguments are much in the same vein.  Quizzing Plaintiff on what she understands about Defendants' corporate structure, or how the law interprets "injury" or "damages," does nothing to demonstrate Plaintiff's inadequacy as a class

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

representative, as it does nothing to show that Plaintiff is either antagonistic to the class or will fail to properly pursue the interests of the class. It merely demonstrates that Plaintiff, a layperson, does not understand the intricacies of the law or lawsuits. But that is why a representative is – not only encouraged, but outright *required* – to hire effective legal counsel.

In short, the quantum of understanding necessary on the part of a representative is not nearly as complex as Defendants would have it. "The plaintiff class representative need only have a marginal familiarity with the facts of his case and does not need to understand the legal theories upon which his case is based to a greater extent." *Clark*, 343 Ill. App. 3d at 550-51 (internal quotations omitted). The Court finds that the adequacy of representation requirement is fulfilled in this case.

## VI. FOURTH FACTOR: THE CLASS ACTION PROCEDURE IS THE APPROPRIATE METHOD FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CONTROVERSY (735 ILCS 5-2/801(4)).

Finally, the fourth statutory factor requires the Court to consider whether "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(d) (2018). The balance of Defendants' remaining arguments are entered on this factor.

One of these arguments centers around who was Plaintiff's employer. Defendants seem to invest this with independent legal significance. But this was already addressed in the context of Defendants' § 2-615 motion to dismiss. The terms "employer" and "employee" appear nowhere in BIPA, nor do any related terms. In fact, BIPA expressly contemplates many circumstances well outside the employment context, such as "finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14-5(b) (2018).

Accordingly, dividing the world up into "Employer Defendants" and "Non-Employer

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

Defendants" is meaningless for purposes of BIPA liability, which applies to any "private entity" (740 ILCS 14/10-15 (2018)) who constitutes an "offending party" (740 ILCS 14-20 (2018)).

To the extent Defendants' argument asks this Court to first construe those terms, and then to apply them to the facts of this case, the Court must decline. This involves disputed issues of fact, going to the merits of the case, and/or unsettled legal issues. As previously established, it is not the province of the Court to decide these issues on a motion to certify a class. Nor will the Court render an advisory opinion. Indeed, issues like this weigh affirmatively in *favor* of class certification, as they will be common questions to which any affected class member will seek an answer – no matter what that answer may be.

Much the same is true for Defendants' other arguments, which may be broadly classified as "corporate liability." Defendants claim each Network location is independently owned and operated, and argue that only some defendants will be liable as to some class members, mentioning in passing things such as the statutes regarding limited liabilities. Defendants make a further argument that they cannot be held liable for anything other than events occurring in Swansea. Defendants even go so far as to as to argue there are "constitutional concerns" as to the rights of any non-party entities. Defendants do not provide any explanation, however, as to how Defendants would have standing to raise any such concerns on behalf of entities with whom they also disavow any connection.

For her part, Plaintiff points out that she has pleaded from the outset of the case a variety of theories assessing mutual liability of the Network. Those theories include topics such as *respondeat superior*, alter ego, agency, joint enterprise, civil conspiracy, *etc.* Plaintiff points out any assertion by Defendants as to who did or did not operate any given Network location

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

simply begs the questions this lawsuit will answer. Plaintiff further contends that the fact Defendants raise these common questions shows all the more strongly why this case should proceed as a class action.

Both sides have presented discovery responses, discovery productions, public documents, Network documents, *etc.* in support of their positions. The Court has reviewed all of these materials. The Court finds that none of these materials conclusively resolves such issues either way.

Accordingly, the Court concludes that the parties have legitimate disputes of material facts over these issues, and those issues intersect in several instances with unresolved questions of law. The Court further finds that many of these arguments go to the merits of the case. As such, the Court will not resolve them on a motion for class certification. Nor will the Court issue an advisory opinion.

Once again, the presence of such sweeping issues – essentially, "who is liable for what, and to whom" – argues in favor of class certification, not against it. Seeking the answers to these questions – questions applicable across the class, and the common answers which will be generated – makes proceeding on a class basis an appropriate method for the fair and efficient adjudication of these controversies.

**VII. ORDER AND FINDINGS.**

Pursuant to the foregoing analysis, the Court finds the case is proper to proceed as a class action in accordance with 735 ILCS 5/2-801 (2018). The Court hereby certifies the following class:

> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court also finds it appropriate to certify the following subclass:

All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network location in Swansea, Illinois, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*

Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, the judge or any officer of the court presiding over this action.

The Court finds it appropriate to certify each of these classes as to all issues in this case. The Court further finds it appropriate to certify these classes as to legal and factual issues concerning the liability of the Network and those associated with it. The Court reserves jurisdiction to certify further subclasses or otherwise amend these certifications as circumstances warrant.

**SO ORDERED**:

**DATE**: March 12, 2019.

[signature]

Hon. Kevin T. Hoerner

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 2

FILED
11/2/2022 1:02 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
20146547

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

# EXHIBIT B

FILED DATE: 11/2/2022 1:02 PM   2022CH09803

# PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

Peiffer Wolf Carr Kane Conway & Wise, LLP ("Peiffer Wolf") was founded in 2013. Joseph Peiffer, Peiffer Wolf's managing partner, previously a litigation partner at Fishman Haygood, LLP in New Orleans, founded the firm to take on cases that change people's lives. To this end, Peiffer Wolf handles a wide variety of cases, including a variety of collective, class, and mass actions. Since its inception, Peiffer Wolf has acquired talented attorneys from coast to coast, becoming a national litigation firm.

MAIN OFFICE
1519 Robert C. Blakes Sr. Drive,
New Orleans, LA 70130

ST. LOUIS OFFICE
818 LAFAYETTE AVE., FLOOR 2
St. Louis, MO 63104

ILLINOIS OFFICE
1778 Caprice Court
O'Fallon, IL 62269

CLEVELAND OFFICE
1422 Euclid Avenue, Suite 1610
Cleveland, OH 44115

AUSTIN OFFICE
11801 Domain Blvd., 3rd Floor

LOS ANGELES OFFICE
5042 Wilshire Blvd. #304
Los Angeles, CA 90036

SAN FRANCISCO OFFICE
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111

ROCHESTER OFFICE
1150-J Pittsford-Victor Road, 1st Floor
Pittsford, NY 14534

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

## ATTORNEY PROFILES

**Joseph Peiffer** is the managing shareholder of Peiffer Wolf. His practices consist of representing individuals and institutions that have been harmed by investment banks and brokerage firms, prosecuting ERISA class actions, and representing victims of labor trafficking and those who have suffered catastrophic injury. He has co-authored a treatise Litigating Business and Commercial Tort Cases, which is published by Thompson West.

Joe has also taught and lectured extensively. He co-created and taught a class entitled Storytelling and Advocacy at Loyola Law School. Also, at Loyola Law School, he has taught a course entitled "The Basics of Arbitration" and he also serves as an adjunct professor teaching Trial Advocacy. He has guest lectured at Tulane Law School in its Securities Regulations class and Syracuse Law School on securities arbitration. He has spoken at many national conventions on a variety of topics including prosecuting large, multi-client claims, broker's deficient advice to retire and FINRA arbitration.

Joe has represented hundreds of individual retirees against their brokers in FINRA arbitration. The highlights of this practice include representing 32 Exxon retirees in a 90-day FINRA arbitration against Securities America that resulted in a $22 million verdict — one of the largest ever awarded by a FINRA arbitration panel. He has also represented hundreds of Xerox and Kodak retirees against their broker resulting from the broker's fraudulent advice to retire and subsequent unsuitable investments. He has represented hundreds of families in cases involving private placements and Ponzi schemes.

His financial services fraud practice also includes representing hospitals and municipalities around the country in cases involving their issuance of auction rate securities. He also serves as co-lead counsel on several ERISA class actions against large financial services firms alleging that they did not prudently invest retirement money and had conflicts of interest. He also is on the plaintiffs' steering committee in a nationwide antitrust class action involving the illegal tying of cable set- top boxes to the provision of premium cable services. Joe also currently represents hundreds of clients in cases involving serious injuries sustained by pharmaceutical products.

Finally, he represents victims of human trafficking and labor exploitation. In one such case, the plaintiffs have alleged that the defendants have failed to pay overtime, improperly deducted for employee housing, and held the plaintiffs passports while in the United States. He has travelled extensively to the Philippines for this case and another one involving a rig explosion where two of his clients working on a rig owned by Black Elk exploded.

FILED DATE: 11/2/2022 1:02 PM   2022CH09803

Joe was one of three Louisiana lawyers ranked by Chambers USA for securities litigation in 2011. He has been named a 2013 Rising Star by his peers in the Class Action Administration organization. He has been quoted by USA Today, Wall Street Journal, the Associated Press, New York Times, New York Daily News, The Los Angeles Times, Business Week, Investment News, and many other publications. Mr. Peiffer has also appeared on CNN. He was named as one of the fifty Leaders in Law by New Orleans City Business Magazine.

He has also successfully risen into the leadership of several national bar associations. He twice served as the chairman of the Business Torts Section of the American Association for Justice. He currently serves as President of PIABA – a nationwide bar association of lawyers that represent individuals and institutions in arbitrations to recover money lost by investment banks and brokerage firms.

Joe graduated from Tulane School of Law, cum laude, in 1999. While at Tulane, he served on the Tulane Law Review and was involved with the Tulane Legal Assistance Program. Prior to attending Tulane, he graduated from Bowling Green State University in 1996 with a degree in communications.

**Adam Wolf** has developed a national reputation as a leading appellate, complex litigation, and civil rights litigator. He successfully argued a case in the United States Supreme Court, *Safford Unified School District No. 1 v. Redding*, 557 U.S. 364 (2009), that defined the scope of the Fourth Amendment regarding strip searches in public schools. The Court's opinion in *Safford* marked the first time in forty years that the Supreme Court ruled in favor of a student who claimed that her school violated her constitutional rights. For his efforts in this case, Mr. Wolf was named Attorney of the Year in California by California Lawyer Magazine.

Mr. Wolf has argued in numerous federal and state courts of appeals, in addition to the United States Supreme Court. He has represented groups and individuals whose constitutional rights have been violated, organizations who seek to vindicate their rights, and governmental entities who were harmed by corporate misconduct.

Mr. Wolf has lectured around the country regarding constitutional law and civil rights. He has been quoted in hundreds of domestic and international newspapers, including the New York Times, Washington Post, Los Angeles Times, USA Today, and Wall Street Journal. Additionally, Mr. Wolf has appeared on numerous television and radio programs, including Good Morning America, CBS Evening News, ABC World News, NBC Nightly News, CNN Headline News, National Public Radio, and the BBC.

Mr. Wolf has been appointed to leadership positions in numerous class actions and mass actions throughout the country.

FILED DATE: 11/2/2022 1:02 PM   2022CH09803

**Daniel Carr** represents a diverse client base in a variety of commercial disputes, complex litigation, and arbitration. Daniel handles numerous state and federal lawsuits for individuals and businesses, and he currently represents investors, and municipalities in FINRA arbitration proceedings. Together with Joe Peiffer, Daniel also serves as co-counsel in several ERISA and antitrust class action lawsuits and represents individuals in litigation involving pharmaceutical products, labor exploitation, fraudulent investments, and wrongful death.

Daniel is a member of several nationwide bar associations, including PIABA (Public Investors Arbitration Bar Association), and he previously served on the board of directors of the Business Torts Section of the American Association for Justice.

Daniel received his law degree from Tulane School of Law, summa cum laude, in 2006. While at Tulane, he was elected Senior Articles Editor for the Tulane Law Review, and he worked as a fellow in the Legal Analysis Program. Following law school, Daniel was privileged to serve as a law clerk to Judge Jacques L. Wiener, Jr., on the United States Court of Appeals for the Fifth Circuit.

**Jason Kane** is a securities attorney practicing out of the firm's Upstate New York office. He has extensive experience representing investors in Financial Industry Regulatory Authority arbitrations and New York State Courts.

Jason graduated from the State University of New York at Geneseo in 2004 having earned his B.A. in Economics. Thereafter, Jason attended the Syracuse University College of Law, and received his Juris Doctorate, Cum Laude, in 2007.

While attending the Syracuse University College of Law, Jason served as a form and accuracy editor for the Syracuse Journal of International Law and Commerce. He also gained valuable experience as a student law clerk for Magistrate Judge George H. Lowe and served as a volunteer at the United States Attorney's Office in the Northern District of New York where he assisted the Assistant United States Attorneys prosecute their cases.

Jason has represented hundreds of investors in Upstate New York and around the country in some of the highest profile securities cases originating out of Upstate New York. He has recovered millions of dollars in FINRA arbitration and mediation while representing individuals against their former brokers and brokerage firms. He often assists his victimized clients through the regulatory investigations that result from the large scale scams perpetrated by their unscrupulous brokers.

**Brandon Wise** joined the firm after managing his own boutique practice that focused on class, collective, and employment matters. Brandon has successfully litigated collective and class action cases in across the country in state and federal courts.

FILED DATE: 11/2/2022 1:02 PM    2022CH09803

Brandon has led Peiffer Wolf's BIPA practice since its inception, and to date, has been lead counsel on more than 250 BIPA filings. Brandon's BIPA settlements include:

*Alonzo Hayes v. Saddle Creek Corporation*, Cas No. 3:19-cv-1143-SMY, appointed lead counsel in class action that resolved for $390,000;

*Andrew Ellis v. Terminal Operations Management, Inc.*, Case No. 2019-CH0-9407, appointed lead counsel in class action that resolved for $409,000;

*Belva Joyce Hill v. Valli Produce of Evancston, Inc.*, Case No. 2019-CH-13196, appointed lead counsel in class action that resolved for $815,000;

*Ben Redmond v. Keystone Environment Resources, Inc.*, Case No. 2019-CH-11150, appointed lead counsel in class action that resolved for $79,500;

*Bret Bray and Jason Houseman v. Hixson Lumber*, Case No. 2019-L-9, appointed lead counsel in class action that resolved for $84,700;

*Cassandra Boyle v. Harbor Freight*, Case No. 3:19-cv-00498-SMY-GCS, appointed lead counsel in class action that resolved for $595,000;

*Charles Hall v. Pepsi MidAmerica Co.*, Case No. 2018-L-20, appointed lead counsel in class action that resolved for $114,000;

*Christopher Dixon v. Grunt Style, LLC*, Case No. 2019-CH-01981, appointed lead counsel in class action that resolved for $450,000;

*Crystal Lee v. Neimann Foods*, Case No. 2019-L-00152, appointed lead counsel in class action that resolved for $4,200,000;

*Connie Young v. Worldwide Technology*, appointed lead counsel in class action that resolved for over $2,000,000;

*Charles Hall v. Pepsi Mid America Co.*, Case No. 2018-L-20, appointed lead counsel in class action that resolved for $115,000;

*David Kirby v. Gurtler Chemicals, Inc.*, Case No. 2019-CH-09395, appointed lead counsel in class action that resolved for $69,000;

*Emily Reid Farris v. Tutera Group Inc., et al*, Case No. 2019-CH-42, appointed lead counsel in class action that resolved for $289,800;

FILED DATE: 11/2/2022 1:02 PM  2022CH09803

*Gary Bird v. Three Z Printing Co*, Case No. 2020-L-12, appointed lead counsel in class action that resolved for over $700,000;

*Glen Ralph v. Get Fresh*, Case No. 2019-CH-02324, appointed lead counsel in class action that resolved for $675,000;

*Isaac Brown v. Trilogy Warehouse*, Case No. 2019-L-0212, appointed lead counsel in class action that resolved for $65,000;

*Israel James v. Mado Healthcare*, Case No. 2019-CH-06140, appointed lead counsel in class action that resolved for $500,000;

*Jason Morris v. Imperial Towers Condominium Assn.*, appointed lead counsel in class action that resolved for $120,000 (for a class of 60, making this one of the largest per class member BIPA recoveries);

*Jhamala Thomas v. Kik Custom Products Inc.*, Case No. 2019-CH-02471, appointed lead counsel in class action that resolved for $957,600;

*John Charles, et al v. Scheels All Sports Inc.*, Case No. 2020-L-0180, appointed lead counsel in class action that resolved for $625,000;

*Joseph Trottier v. Summit Staffing, Inc.*, Case No. 2019-CH-02731, appointed lead counsel in class action that resolved for $940,000;

*Kevin Truss v. Four Seasons Heating and Air Conditioning*, Case No. 2019-CH-09633, appointed lead counsel in class action that resolved for over $700,000;

*Luanne Moleterno v. Touchpoint Logistics*, Case No. 2020-L-000364, appointed lead counsel in class action that resolved for $48,000;

*Lucas Boyd v. RREM Inc.*, Case No. 2019-CH-02321, appointed lead counsel in class action that resolved for $196,000;

*Michael Day v. Southern Illinois Hardware, LLC*, Case No. 3:20-cv-00008-SMY-MAB, appointed lead counsel in class action that resolved for $196,000;

*Nicole Smith v. D&W Fine Pack, LLC*, Case No. 2021-L-00182, appointed lead counsel in class action that resolved for over $1,000,000;

*Richard Graf v. Orbit Machining Company*, Case No. 2020-CH-03280, appointed lead

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

counsel in class action that resolved for $59,400;

*Robert Maricle v AgReliant Genetics*, Case No. 2019-L-000481, appointed lead counsel in class action that resolved for $330,000;

*Shannon Delgado v. America's Auto Auction*, Case No. 2019-CH-04164, appointed lead counsel in class action that resolved for $796,000;

*Tanya and Robert Pelka v. Saren Restaurants, Inc.*, Case No. 2019-CH-14664, appointed lead counsel in class action that resolved for $475,000;

*Ted Harry v. Provider Plus, Inc.*, Case No. 2017-L-0710; appointed lead counsel in class action that resolved for $71,825;

*Timothy Cravens v. Dematic Corp,* Case No. 1:20-cv-01190-JBM-JEH, appointed lead counsel in class action that resolved for over $1,000,000;

*Thome v. NovaTime Technology, Inc.* 1:19-cv-06256, appointed co-lead counsel in class action that was resolved for $14,100,000.00;

*Yeske et al v. Macoupin Energy LLC et al*, Case No. 2017-L-24, appointed lead counsel in class action that resolved for $750,000;

*Yvonne Wilhite v. Sun Basket, Inc.*, Case No. 20-L-0045, appointed lead counsel in class action that resolved for $250,000

Brandon has served as class or collective counsel in the following resolved collective and class matters:

*Volz, et al. v. Provider Plus, Inc., et al.*, a Fair Labor Standards Act ("FLSA") collective action involving 45 collective action members. The confidential settlement agreement was approved by Judge Mummert within hours of its submission to the court.

*Carver, et al. v. Foresight Energy LP, et al.,* WARN Act litigation brought on behalf of a class of former coal miners. Mr. Wise secured the first reported decision, a significant legal victory, regarding the WARN Act's "natural disaster" exception. 2016 WL 3812376 (Opinion entered July 12, 2016). After the defendants' motion to dismiss was denied, the parties reached a class-wide settlement of $550,000 for a class of 75 employees.

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

*Volz v. Tricorp management Company, et al.*, a FLSA collective in class action where Mr. Wise was appointed Class Counsel. The parties reached a $350,000 settlement for bartenders, servers, hosts, and other tipped employees of the largest T.G.I. Friday's franchisee in the Midwest.

**REPRESENTATIVE CASES**

Peiffer Wolf attorneys were appointed class counsel or serve as counsel in numerous class and collective actions, including:

*Whitley, et al. v. J.P. Morgan Chase & Co., et al.*, a class action lawsuit on behalf of retirement investors against J.P. Morgan Chase & Co. and various other J.P. Morgan entities over the sale and administration of the JP Morgan Stable Value Fund. Received preliminary approval for a class wide settlement of $75 million.

*Volz, et al. v. Provider Plus, Inc., et al.*, a Fair Labor Standards Act ("FLSA") collective action involving 45 collective action members. The confidential settlement agreement was approved by Judge Mummert.

*Nevarez v. Forty Niners Football Company*, a certified class action, on behalf of nearly 5,000 class members with mobility disabilities who were denied equal access to Levi's Stadium in violation of the Americans with Disabilities Act.

*Baricuarto, et al. v. Industrial Personnell and Management Services, Inc. et al.,* a human trafficking case that required extensive travel and litigation in the Philippines, and resulted in a multi-million dollar settlement.

*In re Pacific Fertility Center Litigation*, a putative class action on behalf of nearly 1,000 people whose embryos were compromised in a freezer tank at a fertility center.

*Amador v. California Culinary Academy*, representing a certified class of former students of for-profit school California Culinary Academy regarding class members' student loans.

*Bilewicz v. FMR LLC,* a case brought on behalf of current and former employees of Fidelity Investments, alleging that Fidelity violated ERISA by offering exclusively high-fee Fidelity mutual fund products in its retirement plan and by repeatedly adding funds to the plan with little or no track record. Plaintiffs further alleged that the Fidelity plan's fees are very high for a multi- billion-dollar plan, and Fidelity has failed to follow sound fiduciary practices for multi-billion dollar plans. This case was successfully settled, and Peiffer Wolf was approved as co-class counsel in that action.

*Carver, et al. v. Foresight Energy LP, et al.,* WARN Act litigation brought on behalf of a class of former coal miners. Peiffer Wolf secured the first reported decision, a

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

significant legal victory, regarding the WARN Act's "natural disaster" exception. 2016 WL 3812376 (Opinion entered July 12, 2016). After the defendants' motion to dismiss was denied, the parties reached a proposed class-wide settlement of $550,000 for a class of 75 employees.

*Volz v. Tricorp management Company, et al.*, a FLSA collective in class action where PRW Legal attorney was appointed class counsel. Settled for $350,000, for bartenders, servers, hosts, and other tipped employees of the largest T.G.I. Friday's franchisee in the Midwest.

*Hanson v. Berthel Fisher & Company Financial Services, Inc., et al.*, a securities class action filed on behalf of investors in a real estate investment program that raised approximately $26 million from the investing public. Claims were predicated upon the role played by Berthel Fisher, the managing broker-dealer of the program that allegedly organized and oversaw the securities offering by the Program while aware of misrepresentations and omissions in the Program's offering documents.

*Booth et al. v. Strategic Realty Trust, Inc., et al.*, a securities class action where plaintiffs contended that throughout the offering period, the Strategic Realty Trust offering materials contained materially inaccurate and incomplete statements about the company's investment strategy, internal controls, and governance mechanisms. Plaintiffs alleged that their investments lost value as a result of defendants' acts and omissions.

*Thieriot v. Celtic Ins. Co.*, a certified class action where settlement was approved on behalf of a class of people who were overcharged by a health insurer in violation of state law.

Peiffer Wolf currently serves as counsel for plaintiffs in numerous other class and mass actions, including:

*In re: FedLoan Student Loan Servicing Litigation,* 2:18-md-02883 (E.D. Penn.) consolidated multi-district litigation involving one of the nation's largest student loan servicers. Attorney Brandon Wise was appointed to the Plaintiffs' Executive Committee.

*In re: Dicamba Herbicides Litigation,* 1:18-md-02820-SNLJ (E.D. Mo), consolidated multi-district litigation involving the alleged unlawful release of a genetically modified seed and herbicide system.

*Albers, et al. v. Delloite & Touche LLP, et al.*, a mass securities action where Peiffer Wolf represents over 100 investors with claims exceeding $100 million in action alleging violations of state securities laws.

FILED DATE: 11/2/2022 1:02 PM   2022CH09803

*Yao-Yi Liu et al. v. Wilmington Trust Company*, a class action lawsuit on behalf of investors of a fraudulent scheme against Wilmington Trust alleging that Wilmington Trust breached its duties as an escrow agent and aided the perpetrators of the scheme.

*In re Platinum and Palladium Antitrust Litigation*, a case involving claims against BASF Metals, Goldman Sachs, HSBC, and Standard Bank. Plaintiffs allege that Defendants were involved in an unlawful price-setting process of platinum and palladium in violation of the Sherman Act.

*Fouts v. Bank of Nova Scotia, New York Agency et al.*, a class action filed on behalf of holders of debt with interest rates linked to the US Treasuries auction rates, alleging violations of the federal antitrust and commodities laws arising from manipulation of the prices of Treasury securities and related financial instruments through collusion by the primary dealers of U.S. Treasury Department securities.

*In re Fidelity ERISA Float Litigation*, a case involving claims brought by participants in various ERISA plans administered by Fidelity, on behalf of those plans, alleging that Fidelity violated ERISA by improperly using "float" income received as interest on plan assets to pay itself fees and failing to crediting the amount of that float income to the plans or their participants.

*American Chemicals & Equipment Inc. 401(K) Retirement Plan v. Principal Management Corporation, et al.*, a case involving claims brought by ACE 401(k) Plan, on behalf of the shareholders of six mutual funds, against the investment advisors for those funds. Plaintiff alleges that the defendants breached their statutory fiduciary duty under Section 36(b) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-35(b), by charging unfair and excessive fees for their advisory services and retaining excess profits derived from economies of scale.

*Jennifer Roth v. Life Time Fitness, Inc.*, a class action lawsuit filed on behalf of fitness instructors seeking unpaid wages for work that was required by Defendants. Plaintiff alleges that fitness instructors were not compensated for the work they performed before and after fitness classes.

*Carol Prock v. Thompson National Properties, LLC, et al.*, a securities class action filed on behalf of investors in the TNP 6700 Santa Monica Boulevard, a real estate investment program that raised approximately $17 million from the investing public. Claims are predicated upon alleged material misrepresentations and omissions in the program's offering documents by its sponsor and officers and directors of the sponsor.

*In re Dental Supplies Antitrust Litigation*, a class action lawsuit filed on behalf of dental practices, orthodontic practices, and dental laboratories alleging that the country's three largest distributors of dental supplies and equipment agreed not to compete on price and caused injury to plaintiffs in the form of artificially inflated prices.

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

*Matthew Fero et al. v. Excellus Health Plan Inc.*, a class action lawsuit filed on behalf of plaintiffs whose personal information was compromised as a result of a data breach that is alleged to have gone undetected for a 600-day period.

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 2

FILED
11/2/2022 1:02 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09803
Calendar, 2
20146547

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

# EXHIBIT C

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

Siri | Glimstad

NEW YORK | LOS ANGELES | MIAMI
PHOENIX | DETROIT | DENVER | AUSTIN

200 Park Avenue, 17th Floor, New York, NY 10166
sirillp.com | P: (212) 532-1091 | F: (646) 417-5967

# Firm Resume

## Class Action Practice Group

With attorneys across the country, Siri & Glimstad LLP represents clients from coast to coast in class actions, mass torts, and individual actions in state and federal courts. Utilizing decades of experience at major global law firms, we tackle each dispute with a sophisticated, strategic approach, and we fight hard for every one of our clients.

## Attorney Profiles

**Aaron Siri**
**Managing Partner**

Aaron Siri is the Managing Partner of Siri & Glimstad LLP and has extensive experience in a wide range of complex civil litigation matters, with a focus on civil rights, class actions, and commercial litigation.

Mr. Siri has successfully litigated numerous civil rights cases, prosecuted class actions against large corporations resulting in payments to hundreds of thousands of Americans, and has acted as counsel to clients in multiple commercial disputes exceeding one billion dollars, including regarding Oracle Team's challenge for the America's Cup and the collapse of the World Trade Center.

Prior to founding Siri & Glimstad, Mr. Siri was a litigation attorney at Latham & Watkins for over five years. Before Latham, Mr. Siri clerked for the Chief Justice of the Supreme Court of Israel from 2004-2005 where he advised the Chief Justice of relevant American, English (including Commonwealth Countries), and International Law precedents for cases of first impression.

Mr. Siri has also been involved in various pro-bono matters, including representation of asylum applicants, housing discrimination victims, and non-profit organizations in tenant-landlord disputes, as well as being chosen as a Frank C. Newman delegate to present a paper he authored before the United Nations Human Rights Sub-Commission.

Mr. Siri earned his law degree at the University of California, Berkeley School of Law where he received four Prosser Prizes and ten High Honors. He was also the Editor-in-Chief and founder of the Berkeley Business Law Journal, which he developed into a nationally recognized publication, and was ranked as the leading commercial law journal in the country.

FILED DATE: 11/2/2022 1:02 PM   2022CH09803

Prior to law school, Mr. Siri was an auditor at Arthur Andersen LLP, where he examined internal controls and audited corporate documents for private and public micro-cap technology companies.  Mr. Siri is a Certified Public Accountant and an attorney admitted in federal and state courts across the country.

Mr. Siri is regularly interviewed on television, including by Fox News and Newsmax TV, for his expertise regarding certain legal issues.  He has also been published in the Washington Post, Stat News, and Bloomberg.

**Mason A. Barney**
**Partner**

Mason A. Barney is an experienced trial attorney who for the past decade has represented large and small companies, along with individuals, in complex commercial litigations.  Mr. Barney also applies his experience as a litigator to assisting his clients in transactional matters.

Mr. Barney received his J.D., summa cum laude from Brooklyn Law School, in 2005.  He served as a law clerk to the Honorable David G. Trager in the U.S. District Court for the Eastern District of New York.  After clerking, he was a member of the litigation departments at Latham & Watkins LLP and then Olshan Frome Wolosky LLP for a total of ten years.  Before law school, Mr. Barney earned his B.A. from Bowdoin College, where he double majored in Computer Science and Studio Art, and after college he served as a lead database developer for three years at a successful Internet start-up in Washington D.C.

Mr. Barney has appeared in the New York Super Lawyers Rising Stars list, a Thomson Reuters lawyer rating service for lawyers under 40.  In addition to his commercial practice, Mr. Barney was recognized by the New York Legal Aid Society for his outstanding work representing poor and indigent individuals in pro bono matters.  Such matters concerned prisoners' rights, immigration, and special education.

Mr. Barney has also published a number of articles concerning a variety of legal issues.  These include authoring or co-authoring: *The FBI vs. Apple: What Does the Law Actually Say?*, Inc. Magazine (February 2016); *Can Lawyers Be Compelled to Produce Data They Compile? An Emerging Front in the Trenches of e-Discovery Battles*, Bloomberg BNA (May 2015); *Legal Landscape for Cybersecurity Risk is Changing as Federal Government and SEC Take Action*, Inside Counsel Magazine (May 2015); *Tellabs v. Makor, One Year Later*, Securities Law 360 (July 2008); *Not as Bad as We Thought: The Legacy of Geier v. American Honda Motor Co.in Product Liability Actions*, 70 Brooklyn L. Rev. 949 (Spring 2005).  Mr. Barney is an adjunct professor at the City University of New York, teaching Education Law in its graduate studies program, and separately

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

has presented continuing legal education instruction regarding the Foreign Corrupt Practices Act.

**Elizabeth Brehm**
**Partner**

Elizabeth Brehm graduated from Boston University with a Bachelor of Science and earned her master's degree from Long Island University at C.W. Post. She attended Hofstra Law School and obtained a Juris Doctorate, graduating *magna cum laude*, in 2008.

After law school, Ms. Brehm spent a year at Winston & Strawn LLP where she focused on products liability litigation. For nine years prior to joining Siri & Glimstad, Ms. Brehm worked for a New York law firm where she focused on antitrust class action lawsuits, securities fraud, and qui tam and whistleblower litigations.

**Sean Nation**
**Associate**

Sean Nation is an attorney who represents individuals and institutions in complex litigation from case development through trial and appeal. Mr. Nation represents plaintiffs in class actions involving antitrust, consumer, and securities claims. In addition, Sean has an extensive history representing individuals involved in civil rights claims as part of his commitment to pro bono work. He has had significant involvement in a variety of matters involving business disputes, patent litigation, and mass torts.

Mr. Nation obtained his law degree from New York University School of Law where he was Articles Editor for the Journal of Law and Liberty. He graduated from Emory University, magna cum laude, with a degree in political science and history.

Representative Matters:

*In re Solodyn Antitrust Litigation* – Served as counsel for End-Payor Plaintiffs from inception through trial. The case settled at the close of Plaintiffs' evidence, resulting in $43,000,000 for purchasers of Solodyn.

*In re Aggrenox Antitrust* Litigation – Served as counsel for End-Payor Plaintiffs, ultimately resulting in a $54,000,000 settlement.

*In re Diamond Foods* – Served with lead counsel for investors, securing a settlement worth $127 million for investors.

*In re ArthoCare Corp*. – Served with lead counsel for investors, securing a settlement worth $74 million for investors.

FILED DATE: 11/2/2022 1:02 PM   2022CH09803

*In re Bank Overdraft Cases* – Served with Plaintiffs' steering committee to secure multi-million dollar settlements with multiple large banks for improperly reprocessing consumer transactions to maximize overdraft revenue.

*Adkins v. Facebook Inc.* – Served as Plaintiffs' liaison counsel, resulting in a settlement that altered the way Facebook tracks users across the internet.

**Wendy Cox**
**Associate**

Prior to joining Siri & Glimstad, Ms. Cox served for 21 years in the United States Army as an Army Nurse Corps officer and as an Army Judge Advocate. As a nurse corps officer, Ms. Cox worked in several clinical settings to include a pediatric unit, a specialty surgical unit, and an orthopedic surgical unit. During her last year as an Army Nurse Corps officer, she taught Army medics in basic life saving skills before being selected by the Army to attend law school. After graduating law school in 2005, Ms. Cox prosecuted soldiers, advised on operational law issues, taught Constitutional Law at West Point, and advised senior leaders on a variety of legal issues. Following her retirement from the United States Army in 2018, she went on to continue serving soldiers as an attorney for the Office of Soldiers' Counsel.

Wendy Cox graduated cum laude from the State University at Buffalo Law School in New York and summa cum laude from Norwich University with a Bachelor of Science in Nursing. She went on to get her Master of Laws (L.L.M.) degree in Military Law in 2008.

**Catherine Cline**
**Associate**

Catherine Cline has extensive experience in a wide range of civil law, including constitutional, administrative, employment, and election law. Prior to joining Siri & Glimstad, Ms. Cline served as a judicial law clerk for judges in the U.S. District Court for the Middle District of Pennsylvania, the Commonwealth Court of Pennsylvania, and the Supreme Court of Pennsylvania.

Ms. Cline attended law school on a full tuition scholarship, during which time she served as the Editor-in-Chief of the law review and as intern for a U.S. District Court Judge in the Middle District of Florida. Before attending law school, Ms. Cline received her Bachelor of Arts in Economics with a Minor in Business and the Liberal Arts from Penn State University and worked in the Tax Credit Division of the Pennsylvania Department of Community and Economic Development

FILED DATE: 11/2/2022 1:02 PM 2022CH09803

**Sonal Jain**
**Associate**

Sonal Jain graduated from the New York University School of Law with an LLM in International Business Regulation, Litigation and Arbitration in 2020. She received her first degree in law (B.A. LL.B.) from ILS Law College, Pune, a prime legal education institution in India. Prior to joining Siri & Glimstad, Ms. Jain held various internships with top-tier law firms in India where she specialized in complex dispute resolution ranging from consumer and corporate litigation to domestic arbitrations.

**Notable Class Actions Handled By Siri & Glimstad LLP**

*In re: Herff Jones Data Breach Litigation*, Case No. 1:21-cv-01329 (S.D. Ind.) (obtained final approval of a class settlement agreement that includes a settlement fund of $4,350,000 and, separate from the settlement fund, requires the defendant to pay for data security improvments).

*Buchanan v. Sirius XM Radio, Inc.*, Case No. 3:17-cv-00728 (N.D. Tex.) (appointed co-class counsel in a case alleging violations of the TCPA which resulted in a settlement of $25,000,000, plus free satellite radio service).

*Thomas v. Dun & Bradstreet Credibility Corp.*, Case No. 15-cv-3194 (S.D. Cal.) (appointed co-class counsel in a case alleging violations of the TCPA which resulted in a settlement of $10,500,000).

*Gatto v. Sentry Services, Inc., et al.*, Case No. 13 CIV 05721 (S.D.N.Y.) (appointed co-class counsel in a case involving ERISA claims relating to an ESOP which resulted in a settlement of $11,138,938).

*Kindle v. Dejana*, No. 14-cv-06784 (E.D.N.Y.) (appointed co-counsel for plaintiffs in an ERISA matter filed as a class action involving breaches of fiduciary duty related to the management and termination of an ESOP which settled after the beginning of trial for $1,080,000 for the class).